No. 93-402

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

THE STATE OF MONTANA,

      Plaintiff/Respondent,

-v-

DANNY RAY KELLY,

      Defendant/Appellant.



FILED

JUN 21 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          William F. Hooks, Appellate Defender, Helena,
Montana

      For Respondent:

          Joseph P. Mazurek, Attorney General; Patricia
Jordan, Assistant Attorney General; Dennix Paxinos,
Yellowstone County Attorney; Daniel L. Schwartz,
Deputy, Billings, Montana

Submitted on Briefs:  April 21, 1994

Decided:  June 21, 1994

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Following a jury trial, the defendant, Danny Ray Kelly (Kelly), was convicted of one count of aggravated kidnapping, a felony, in violation of § 45-5-303(1)(c), MCA, and two counts of sexual intercourse without consent, felonies in violation of § 45-5-503(1),(3), MCA. Based on that conviction, he was sentenced by the District Court for the Thirteenth Judicial District, Yellowstone County to imprisonment at the Montana State Prison for one hundred years on the aggravated kidnapping charge and to terms of forty years on each of the two charges of sexual intercourse without consent, to run consecutively to each other and concurrently with the term of imprisonment on the aggravated kidnapping charge. Kelly appeals the conviction and sentencing. We affirm the conviction, and reverse and remand for resentencing.

The two issues on appeal are as follows:

1. Did the District Court err in relying on Kelly's constitutional right to remain silent in imposing punishment?

2. Did the District Court improperly bolster the credibility of the alleged victim, J.C., and deny Kelly his right to a fair trial by examining the witness to assess competency, in the presence of the jury, when there was no issue as to competency?

FACTUAL BACKGROUND

During the early morning hours of July 29, 1992, two women Roxanne C., and Victoria Friday, asked Kelly to drive them home from a house party. Kelly drove the women home and left a short time later. Around 8:00 a.m., Roxanne's four children who had

2

stayed overnight at a babysitters, returned home. While they were watching T.V., there was a knock on the door, and Kelly entered the house. He went into Roxanne's room for a short time, and then went into Victoria's bedroom. Victoria told Kelly to leave. He went to the room where the children were watching T.V. and told J.C., who was then eleven years old, that her mother wanted him to take her to the store to buy diapers and formula. J.C. went to ask her mother if it was alright for her to go to the store, but she could not awaken her. J.C. then went with Kelly in his car, however he did not take her to the store but rather took her to various locations, including the apartment where Louis Hollingshed lived, and subjected her to sexual acts.

While in Hollingshed's apartment, J.C. ran into the kitchen grabbed a knife and stabbed Kelly twice in the leg. Kelly struggled to get the knife back from J.C. and in doing so J.C.'s finger was cut. Kelly demanded that J.C. clean up the blood on the floor, so J.C. attempted to do so with a towel. A short time later they left the apartment. While they were getting into Kelly's car J.C. managed to run to a nearby business where Angela Schneider was working. J.C. was shaking and screaming "he is going to kill me." Ms. Schneider took J.C. outside and asked her where the man was, and J.C. pointed to a black man in a blue station wagon. After leading the police on a high speed chase, Kelly was arrested and taken into custody.

The Yellowstone County Attorney's Office subsequently filed an Information charging Kelly with one count of aggravated kidnapping,

3

a felony, and four counts of sexual intercourse without consent, each charge a felony. The State moved the court to dismiss two of the charges of sexual intercourse without consent, and the court granted the motion. A jury trial was held on January 25, 26, and 27, 1993, and the jury returned a verdict finding Kelly guilty of the remaining three charges.

J.C. testified at the trial. Kelly did not attack the credibility or competency of J.C. Although defense counsel and the State did ask the jury panel, during voir dire, questions about whether children in general had the ability to tell the truth, the questioning did not specifically address J.C.'s competency or credibility. The State offered and later withdrew a jury instruction regarding competency of a child witness and defense counsel felt that an instruction was unnecessary. Notwithstanding, after J.C. testified, the District Court questioned her concerning her understanding of the oath and the fact that she raised her left hand as opposed to her right hand in taking the oath. The court asked her if she had told the truth to which she responded "yes." This was all accomplished in the presence of the jury. At that time defense counsel did not object, however, two days later defense counsel moved for a mistrial on the ground that the District Court had bolstered J.C.'s credibility by questioning her in the presence of the jury regarding her competency and credibility. The court denied the motion.

Kelly chose not to testify at trial. The District Court sentenced Kelly to imprisonment at the Montana State Prison for one

4

hundred years on the aggravated kidnapping charge and to terms of 40 years on each of the two charges of sexual intercourse without consent, to run consecutively to each other and concurrently with the term of imprisonment on the aggravated kidnapping charge. Included among its reasons for imposing the sentence the District Court stated, "The Court considered all the facts presented during trial and that the defendant did not testify."

## I - IMPROPER SENTENCING

Kelly contends that the District Court violated his constitutional rights under the Fifth Amendment to the United States Constitution and Article II, section 25 of the Montana Constitution against self-incrimination when it based the sentence in part on his failure to testify.

This Court has previously held that to punish a person for exercising a constitutional right is a basic due process violation. State v. Baldwin (1981), 192 Mont. 521, 525, 629 P.2d 222, 225. It is fundamental that a defendant retains important Fifth Amendment rights after the jury reaches a verdict. U.S. v. Rodriguez (5th Cir. 1974), 498 F.2d 302, 312. When a defendant invokes his or her Fifth Amendment privilege against self-incrimination, a sentencing court may not use his or her failure to waive that right as negative evidence to penalize him or her in deciding upon the appropriate sentence. U.S. v. Heubel (3rd Cir. 1989), 864 F.2d 1104, 1111.

This Court has recognized the importance of the constitutional right not to be a witness against oneself. State v. Imlay (1991),

5

249 Mont. 82, 813 P.2d 979. In Imlay, the defendant was convicted of felony sexual assault. Imlay, 813 P.2d at 980. The defendant received a suspended sentence which contained a special condition that he complete a sexual treatment program. Imlay, 813 P.2d at 980. Because he would not admit that he committed the offense it was determined he was not complying with the treatment and his suspended sentence was revoked. Imlay, 813 P.2d at 982. This Court vacated the sentence and remanded because we concluded that the defendant could not be punished for asserting his constitutional right against self-incrimination. Imlay, 813 P.2d at 985.

In the instant case it is clear that the District Court relied in part on Kelly's failure to testify in imposing the sentence, as it included this fact in the sentencing order. In doing so, the District Court violated Kelly's constitutional right to remain silent. While the State argues that there is no evidence that Kelly received a harsher sentence than he might have otherwise received had he testified, and that there were good reasons why he received a harsh sentence, it is not the defendant's burden to show that his sentence might have been different if he had testified. See, State v. Holder (Ariz.App. 1987), 745 P.2d 138, 141 (where a sentence was reversed because the accused arguably received a sentence greater than he would have had he admitted guilt). The sentencing court simply may not consider the defendant's exercise of his constitutional right to remain silent in the face of his accuser, much less penalize him for doing so. We therefore remand

6

for resentencing without consideration of Kelly's failure to testify.

## II - QUESTIONING OF VICTIM

The second issue Kelly raises concerns the District Court's questioning of J.C. during trial. Kelly contends the District Court committed reversible error when it questioned J.C. in front of the jury. After J.C. testified, and without first excusing the jury, the District Court questioned J.C. as follows:

THE COURT: [J.C.] how old did you say you were?

THE WITNESS: At that time or --

THE COURT: Yeah, or your birthday; I don't care.

THE WITNESS: I was eleven, and my birthday is August 29, 1980.

THE COURT: I notice when you were sworn in you raised your left hand. Did you know you did that?

THE WITNESS: Yeah.

THE COURT: But that isn't too important. The important thing is what the lady asked you is essentially did you swear. You swore to tell the truth?

THE WITNESS: Yes.

THE COURT: And you know the difference between the truth and a lie; don't you?

THE WITNESS: Yes.

THE COURT: Have you told the truth?

THE WITNESS: Yes.

THE COURT: So you do recognize that when you agreed to tell the truth that was required?

THE WITNESS: Yes.

THE COURT: Okay. Okay. I think that they are through now; is that correct?

(Whereupon the witness was excused.)

Kelly maintains that because defense counsel did not challenge J.C.'s competency or attack her credibility, the trial judge should not have taken it upon himself to question J.C. regarding her competency. He alleges that the trial court's questioning of J.C. amounted to impermissible comment on her credibility as a witness, and therefore we should remand the case for a new trial.

There is no age requirement before a person is considered competent to testify. State v. Phelps (1985), 215 Mont. 217, 226, 696 P.2d 447, 453. Rule 601, M.R.Evid., defines witness competency and that rule provides:

> (a) General rule competency. Every person is competent to be a witness except as otherwise provided in these rules.
> (b) Disqualification of witnesses. A person is disqualified to be a witness if the court finds that (1) the witness is incapable of expression concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand the witness or (2) the witness is incapable of understanding the duty of a witness to tell the truth.

Because a witness is presumed to be competent under Rule 601(a), the District Court had no obligation to question J.C. concerning her ability to tell the truth, unless counsel raised the issue of competency or unless the court had some concerns in that regard. If the court found it necessary to interrogate J.C., it should have done so outside the jury's presence. See, State v. Howie (1987), 228 Mont. 497, 503, 744 P.2d 156, 159. State v. Phelps (1985), 215 Mont. 217, 225, 696 P.2d 447, 452.

We conclude that the District Court did err in questioning J.C. in front of the jury. If the court, or counsel, was concerned

8

about J.C's competency, then the court should have established her competency before she testified and outside the presence of the jury. We adopt this procedure for future cases.

However, in the instant case we will not reverse Kelly's conviction for two reasons. First, Kelly failed to make a timely objection at the first available opportunity, after the court's voir dire of J.C. Section 46-20-104(2), MCA, provides that failure to make a timely objection during trial constitutes a waiver of the objection. The motion for a mistrial did not come until settlement of instructions, two days after J.C. testified. Therefore we conclude that Kelly failed to object at the first available opportunity, thereby waiving his objection.

Secondly, we believe the error was harmless. In State v. Smith (1984), 208 Mont. 66, 676 P.2d 185, the trial court also questioned a child witness concerning her competency as a witness in front of the jury. In that case we noted that although it was not proper to question the witness in the jury's presence, the defendant was not prejudiced by the questioning in light of the overwhelming corroborating evidence. Smith, 676 P.2d at 188.

In the instant case, we find that there was substantial direct and corroborative evidence of Kelly's guilt. For example, Louis Hollingshed testified that Kelly visited his apartment with a young girl, that he saw blood on the kitchen floor, and that Kelly had a cut on his thigh. Hollingshed asked Kelly what happened and Kelly replied, "The bitch cut me." Hollingshed also testified that the young girl was frantic, crying, and emotionally upset.

9

Angela Schneider testified that J.C. ran to her workplace shaking and screaming "he is going to kill me," and pointed to a black man in a blue car. The emergency room doctor who examined J.C. shortly after the incident testified that she had lacerations on her fingers, and other injuries consistent with someone who had been sexually and physically assaulted. The State Crime Lab found that a blood stain found on J.C's shirt was consistent with Kelly's blood, and blood stains on the towel which was taken from Louis Hollingshed's apartment were consistent with both Kelly's and J.C.'s blood.

Based on this evidence and other evidence introduced at trial, we conclude that the District Court's questioning of J.C. was harmless error, therefore Kelly's conviction is upheld.

REVERSED AND REMANDED FOR RESENTENCING, CONVICTION AFFIRMED.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

10

June 21, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

William F. Hooks, Esq.
Appellate Defender
P. O. Box 200145, Capitol Station
Helena, MT  59620-0145

Joseph P. Mazurek, Attorney General
, Assistant
Justice Bldg.
Helena, MT  59620

Dennis Paxinos, County Attorney
Daniel L. Schwarz, Deputy
P.O. Box 35025
Billings, MT  59107

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy