No. 01-410

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 333

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

RICHARD EDWARD SHREVES,

        Defendant and Appellant.


APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey M. Sherlock, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Randi M. Hood, Chief Public Defender, Helena, Montana

        For Respondent:

        Mike McGrath, Montana Attorney General, Tammy K. Plubell, Assistant
Montana Attorney General, Helena, Montana; Leo Gallagher, Lewis and Clark
County Attorney, Lisa Leckie, Deputy Lewis and Clark County Attorney,
Helena, Montana


Submitted on Briefs: March 21, 2002

Decided: December 20, 2002

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Appellant Richard Shreves (Shreves) appeals the sentence imposed on him by the First Judicial District Court, Lewis and Clark County. Shreves asserts the District Court violated his right against self incrimination by basing his sentence in part on his failure to show remorse or accept responsibility for his crime. We reverse and remand for resentencing consistent with this Opinion.

¶2    We address the following issue on appeal: Did the District Court violate Shreves' right against self incrimination by basing its sentence in part on his failure to show remorse or accept responsibility for his crime?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶3    On January 18, 2001, the District Court sentenced Shreves to the Montana State Prison for 100 years, with no parole for 60 years, after a jury verdict finding him guilty of the deliberate homicide of Walker Byrd. The District Court based its sentence on its assessment that Shreves is a violent and dangerous offender; on Shreves' extensive past history of violence; on the nature of Shreves' offense which it characterized as a cold-blooded, premeditated killing; and on Shreves' failure to show remorse or accept responsibility for his actions. Based on these same findings, the District Court also put a restriction on Shreves' parole eligibility for the protection of society. *See* § 46-18-202(2), MCA.

¶4    At trial, Shreves chose to testify on his own behalf and assert his innocence. At sentencing, Shreves chose not to testify, but his counsel indicated he maintained his innocence. Because this case presents the issue of whether an adverse inference may be drawn from a defendant's silence at sentencing, we discuss the hearing record regarding Shreves' silence in detail.

¶5    At the sentencing hearing, Gina Rasmussen (Rasmussen), the person who compiled the

presentence investigation report, testified that she based her 100 year recommended sentence in part on the fact that Shreves did not admit the crime to her. Her testimony was as follows:

> Deputy County Attorney: Do you think any lesser degree of time or incarceration is appropriate?
>
> Witness: Not at this point. I explained to Mr. Shreves that without a motive or without remorse or accountability, it is very hard to understand why people do what they do. And as it stands right now, he's not safe to be out on the streets.
> . . .
>
> Defense Counsel: Okay. You have in part, am I correct, that you have based your recommendation, your term of years, on the fact that Mr. Shreves does not admit to this offense?
>
> Witness: That is part of the reasoning. It would be hard to gauge any sense of rehabilitation without him admitting any wrongdoing.
>
> Defense Counsel: He's sort of in a Catch-22, though, isn't he?
>
> Witness: He is, and it was explained to him, too, by myself a couple different times.
>
> Defense Counsel: So -- but you did use that as a factor?
>
> Witness: I used that as a factor, but I also used the wishes of the victim's family.
>
> Defense Counsel: And were there any other factors?
>
> Witness: The seriousness of the offense, his history, the wishes of the victim's family, and his refusal to take responsibility for the crime.
> . . .
>
> Defense Counsel: And when you interviewed Mr. Shreves, he was coherent . . . And cooperative?
>
> Witness: Yes.
>
> Defense Counsel: Other than telling you what you wanted to hear about this crime, right?
>
> Witness: Right.

¶6    Shreves' counsel indicated that Shreves wanted to remain silent at sentencing. She stated:

Richard Shreves . . . continues to maintain his innocence in this matter. . . . I think it's unfortunate that he is placed in the position with the PSI writing that he either has to admit doing something he still currently says he did not do or he pays a greater price for that. He does have legal avenues still open to him that would be, if he were to choose to pursue any of those, any admissions he made, if he just simply made admissions to get a better recommendation out of the PSI officer, it could certainly impact upon those further proceedings contrary to his interests. So I think it is wrong to hold that against him. I think he can still pursue other avenues like appeal and that sort of thing without having to suffer for exercising those legal rights.

¶7     After hearing the testimony and closing arguments, the District Court stated:

Court: Mr. Shreves, do you have anything you want to say? You don't have to say anything.

Shreves: No, sir.

Court: Okay. Very good. I am going to impose a parole restriction. I need to tell you why. I'm doing it based on the pre-sentence investigation. The law is forgiving for those who deserve it and are eligible, but the law is also unforgiving for those who don't. *And as we sit here, you've given us nothing as to why this happened. So what we've got is what appears to be the premeditated killing of an individual with no remorse or responsibility shown on your part.* Your past record shows you to be a violent and dangerous individual. And I think a parole restriction is necessary for the protection of society. Therefore, for the deliberate homicide of Walker Byrd, I will sentence you to 100 years at the Montana State Prison. And I disagree with the county attorney. I don't think for taking someone's life you should be eligible for parole in 30 years. So I'm going to double that. In 60 years you would be eligible for parole. That will be the restriction. (Emphasis added)

In its later order, the District Court stated:

The Court imposed the foregoing sentence for the following reasons: the defendant is a violent, dangerous offender, and has been in the past; the nature of his offense was a cold-blooded, premeditated killing; *a failure to show remorse or responsibility for his action*; and a restriction must be set on defendant's parole eligibility for the protection of society. (Emphasis added)

Shreves now appeals his sentence, asserting it was improper for the District Court to hold his refusal

to admit to the crime against him in determining his sentence.

## II. STANDARD OF REVIEW

4

¶8    This Court reviews a criminal sentence for legality only. *State v. Montoya*, 1999 MT 180, ¶¶ 11-15, 295 Mont. 288, ¶¶ 11-15, 983 P.2d 937, ¶¶ 11-15. Although the State asserts that abuse of discretion is the proper standard and cites *State v. Richards* (1997), 285 Mont. 322, 948 P.2d 240, in its support, we took the opportunity in *Montoya* to discuss the origins of any confusion regarding the standard of review for sentences. We made clear that we review for legality only and we overruled any cases to the extent those cases used an abuse of discretion standard. While *Richards* was not specifically cited in *Montoya*, we take this opportunity to reaffirm that we review a sentence for legality only.

### III. DISCUSSION

**¶9    Did the District Court violate Shreves' right against self incrimination by basing its sentence in part on his failure to show remorse or accept responsibility for his crime?**

¶10   Under the Fifth Amendment of the United States Constitution and Article II, Section 25 of the Montana Constitution, defendants have the right to remain silent and not incriminate themselves in criminal proceedings. We have previously held that the state constitutional guarantee with respect to a defendant's right to remain silent affords the same protection as that under the federal constitution. *State v. Armstrong* (1976), 170 Mont. 256, 260, 552 P.2d 616, 619 *overruled in part by* ***State v. Johnson* (1986), 221 Mont. 503, 512-14, 719 P.2d 1248**, 1254-55; *compare* Fifth Amendment: "[No person] shall be compelled in any criminal case to be a witness against himself" to Mont. Const. Art. II, Sec. 25: "No person shall be compelled to testify against himself in a criminal proceeding." **However, in *Johnson*, we held that Montana's state constitutional rights may be broader than federal constitutional rights, even when the language is similar. *Johnson*, 221 Mont. at 512-14, 719 P.2d at 1254-55 (holding**

5

**Montana Constitution grants broader rights regarding requests for counsel).** *See also State v. Fuller* (1996), 276 Mont. 155, 160, 915 P.2d 809, 812 (implying defendant's rights are the same under the federal and Montana constitutions, but granting rights broader than those established to date under federal law).

¶11    Before we turn to the issue presented by this case, we first address three preliminary matters that are important in the context of defendant's appeal.  First, in order to obtain the constitutional protection against self incrimination, the general rule is that a defendant must first invoke his right to remain silent. *Fuller*, 276 Mont. at 160, 915 P.2d at 812.  In this case, Shreves testified at trial but chose not to speak at sentencing.  Further, his counsel made clear that his choice not to speak at sentencing was because he still had legal avenues to pursue, that it was "wrong to hold that [silence] against him," and that he should not "suffer for exercising those legal rights."  We deem Shreves' actions and his counsel's statements sufficient to invoke his right to remain silent at sentencing. Therefore, we need not address whether this situation is one for which the requirement to invoke the privilege against self incrimination is excused, whether Shreves' statements were compelled, or whether Shreves' testimony at trial acted as a waiver of the right after the jury delivered a guilty verdict.

¶12    Second, a court's oral pronouncement of sentence controls over a subsequent written sentence when there is a conflict between the two. *State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, ¶ 40, 957 P.2d 9, ¶ 40.  In this case, the District Court stated during the oral pronouncement that the parole restriction was based on Shreves' lack of remorse.  However, the later written order stated that "the foregoing sentence," which we interpret here to mean the total 100 year sentence *and* the parole restriction, was based in large part on Shreves' lack of remorse. We conclude that here the

distinction between the oral sentence and the written sentence is one without a difference because it is clear the District Court considered Shreves' lack of remorse as a general factor in determining the entire sentence. Therefore, Shreves' entire 100 year sentence and the parole restriction are based in significant part on Shreves' refusal to admit guilt.

¶13 Third, a sentencing court can consider any evidence relevant to a defendant's sentence, including evidence relating to the crime, the defendant's character, background history, mental and physical condition, and any other evidence the court considers to have probative force. *State v. Collier* (1996), 277 Mont. 46, 63, 919 P.2d 376, 387. Therefore, this decision is not based on the evidence presented to the District Court, but rather on the District Court's decision to base its sentence in large part specifically on Shreves' refusal to admit to the crime.

¶14 Having addressed these preliminary matters, we now turn to the case law relevant to the issue presented--a question of first impression for this Court. First, we must recognize certain fundamental rules that have bearing here. For example, it is a violation of due process to punish a person for exercising a constitutional right. *State v. Kelly* (1994), 265 Mont. 298, 301, 876 P.2d 641, 644. Furthermore, we have followed federal law in holding that a defendant's silence at criminal trial cannot be used as evidence against him. *State v. Wilkins* (1987), 229 Mont. 78, 81, 746 P.2d 588, 589 (citing *Griffin v. California* (1965), 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106, 109). We have also held that the privilege against self incrimination "does not turn upon the type of proceeding in which its protection is invoked, but [rather] upon the nature of the statement or admission and the exposure which it invites." *Fuller*, 276 Mont. at 160, 915 P.2d at 812 (citing *Estelle v. Smith* (1981), 451 U.S. 454, 462, 101 S.Ct. 1866, 1873, 68 L.Ed.2d 359). Accordingly, the protection against self incrimination extends beyond trial to those already convicted of crime and

applies to punishment as well as the determination of guilt. *Fuller*, 276 Mont. at 160, 915 P.2d at 812; *Estelle*, 451 U.S. at 462-63, 101 S.Ct. at 1872-73. Given these rules, this case presents the question of whether the rule against a negative inference from silence at criminal trial applies to sentencing as well, when the defendant has maintained his innocence throughout the proceedings.

¶15     Shreves asserts that the District Court violated his right against self incrimination by basing its sentence in large part on his failure to admit to the crime. The State argues that the District Court properly considered Shreves' lack of remorse as a factor relevant to Shreves' rehabilitation and the danger he presented to the community. The State argues that the District Court found Shreves lacked remorse based on his trial testimony and the other evidence before it.

¶16     We have previously reversed sentences based on violation of the constitutional right to remain silent. In *State v. Imlay* (1991), 249 Mont. 82, 91, 813 P.2d 979, 985, we held that it is a constitutional violation to revoke the suspended sentence of a person who refuses to confess guilt in a sexual therapy program. We followed *Imlay* in *Fuller* when we held that a defendant's confessions of guilt to additional crimes in a sexual therapy program required as a condition of his suspended sentence could not be used as the basis of subsequent additional convictions. *Fuller*, 276 Mont. at 167, 915 P.2d at 816. In *Kelly*, 265 Mont. at 302, 876 P.2d at 644, we reversed the trial court when it specifically referred to the defendant's silence at trial as a basis for its sentence.

¶17     In *State v. Henrich* (1994), 268 Mont. 258, 272-73, 886 P.2d 402, 411, however, we affirmed a sentence of the District Court even though the defendant claimed the counselor who performed a presentence sexual evaluation violated his right to remain silent by recommending incarceration in part on his failure to admit to the crime. In that case, we held that the trial court did not base its decision on the defendant's refusal to admit guilt, but rather on the defendant's dangerousness,

8

characteristics, the presentence investigations, criminal record, conduct, psychological reports and on finding that the defendant's prospects of rehabilitation were slim. While we did not address the fact that the finding that the defendant's prospects of rehabilitation were slim was based in part on the defendant's refusal to admit guilt, we did emphasize that there was sufficient basis for the sentence.

¶18 The United States Supreme Court has also reversed sentences based on the violation of the right to remain silent. For example, in *Estelle*, the Court held that the phrase "criminal case" in the Fifth Amendment includes the sentencing phase of a conviction. *Estelle*, 451 U.S. at 462, 101 S.Ct. at 1873. The Court went on to hold that use of a psychiatrist's testimony from a pretrial competency interview violated the defendant's right to silence at sentencing because the defendant was not given *Miranda* warnings before the interview. The Court noted that the testimony was used to prove an element required to be proven beyond a reasonable doubt under Texas law for death penalty cases. In *Mitchell v. United States* (1999)*, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424, the Court reversed a sentence where the district court held the defendant's silence against her on a specific fact determinative of the length of her sentence under the federal sentencing guidelines.

¶19 In contrast to these cases, the State cites to a number of other jurisdictions that have considered arguments similar to Shreves' position and have upheld the defendants' sentences. These cases hold that a court may consider lack of remorse as basis for a sentence, but may not punish a defendant for refusing to admit guilt. *See Bergmann v. McCaughtry* (7th Cir. 1995), 65 F.3d 1372, 1379; *United States v. Johnson* (7th Cir. 1990), 903 F.2d 1084, 1090; *People v. Coleman* (Ill. App. Ct. 1985), 481 N.E.2d 335; *People v. Wesley* (Mich. 1987), 411 N.W.2d 159; *Jennings v. State* (Md. 1995), 664 A.2d 903. However, the cases all also note that "it is difficult to distinguish between

9

punishing a defendant for remaining silent and properly considering a defendant's failure to show remorse in setting a sentence." *Bergmann*, 65 F.3d at 1379.

¶20    In this case, we are unable to make such a distinction. Shreves maintained his innocence at trial and at sentencing. He remained silent at sentencing. Yet, the District Court based its sentence in large part on Shreves' lack of remorse and analogized that lack of remorse to Shreves' silence. Specifically, the court stated, "[A]s we sit here, you've given us nothing as to why this happened." The court then based its sentence on Shreves' failure to "give" the court something about why the crime happened. While we agree with the State that rehabilitation is an important factor to consider at sentencing and, while we agree that lack of remorse can be considered as a factor in sentencing, we cannot uphold a sentence that is based on a refusal to admit guilt. To do so would reflect an inquisitorial system of justice rather than our adversarial system. *Griffin*, 380 U.S. at 614, 85 S.Ct. at 1232. Therefore, we hold that the District Court improperly penalized Shreves for maintaining his innocence pursuant to his constitutional right to remain silent.

¶21    In so holding, we make clear that the trial court can consider as a sentencing factor a defendant's lack of remorse as evidenced by any admissible statement made by the defendant pre-trial, at trial, or post-trial. Moreover, a defendant's lack of remorse may be gleaned, without more, from the manner of the commission of the offense as demonstrated by the evidence at trial or from other competent evidence properly admitted at the sentencing hearing.

¶22    The rule of the case at bar is a narrow one and is grounded in the state and federal constitutional protections against self incrimination. It is simply this: a sentencing court may not draw a negative inference of lack of remorse from the defendant's silence at sentencing where he has maintained, throughout the proceedings, that he did not commit the offense of which he stands

10

convicted--i.e. that he is actually innocent.

¶23 To allow sentencing courts to do otherwise would force upon the defendant the Hobson's choice we discussed in *Fuller* and which is condemned by the Fifth Amendment and Article II, Section 25--specifically, that the defendant must either incriminate himself at the sentencing hearing and show remorse (with respect to a crime he claims he did not commit) or, in the alternative, stand on his right to remain silent and suffer the imposition of a greater sentence. To compel that of a defendant is constitutionally impermissible.

## IV. CONCLUSION

¶24 The District Court violated Shreves' right against self incrimination when it based its sentence in large part on Shreves' refusal to admit to his crime and show remorse at sentencing.

¶25 We reverse and remand for resentencing consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

11

**Justice Jim Rice dissenting.**

¶26 I respectfully dissent.

¶27 I agree with the legal reasoning provided by the Court, and the rule which results therefrom: a sentencing court may consider lack of remorse, but it "may not draw a negative maintained, throughout the proceedings, that he did not commit the offense of which he stands convicted . . . ." I have no disagreement with this principle; it is the application here, based upon this record, with which I disagree. I simply do not draw the conclusion from the record as a whole, as the Court does, that the District Court imposed sentence on the basis of the Defendant's silence.

¶28 After taking arguments from counsel, the sentencing court first asked the Defendant if he wanted say something, adding, "You don't have to say anything." Thus, the court specifically acknowledged Defendant's right to remain silent. After the Defendant declined, the court then stated that it intended to impose a parole restriction based upon the pre-sentence investigation. The PSI had presented a devastating picture of the Defendant, concluding that he had not been required by his family to take responsibility for previous actions, that his chances of rehabilitation were "very poor," but further, and most significantly, that the Defendant did not value human life ("he has no regrets about taking the life of another") and had belittled the victim's death (quoting Defendant as stating "I'm a better shot than that"). This certainly supported a conclusion that the Defendant lacked remorse for the crime or for the loss of human life.

¶29 Then, the court stated:

> [A]s we sit here, you've given us nothing as to why this happened. So what we've got is what appears to be the premeditated killing of an individual with no remorse or responsibility shown on your part.

12

I understand from this comment that the court was summing up the evidence which had been presented to it. As was his right, acknowledged by the court, the Defendant had offered nothing. He offered no evidence to rebut the PSI or to suggest an alternative to its recommendations. Thus, the court was left to make a decision based upon the State's evidence, and I find the court's simple noting of that conclusion to be innocuous. Just as a prosecutor can argue in trial that the defense has failed to offer opposition to the State's witnesses without it being considered an improper comment upon a defendant's right to silence, *State v. Rodarte*, 2002 MT 317, ___ Mont. ___, ___ P.3d ___, it is permissible for a judge to state that the State has provided evidence and the defendant has not. A sentencing judge is certainly entitled to assume that the presumption of innocense no longer exists, and that the defendant stands guilty of the crime charged. That a sentencing judge makes comments reflecting on these principles should not invalidate the sentence.

¶30    My interpretation of the sentencing court's comments is confirmed by the written judgment, which cites lack of remorse and other factors in support of the sentence, but states nothing about the Defendant's silence nor his failure to admit to the crime. It is also notable that, during the oral imposition of sentence, the court did not state that it was imposing a sentence based upon the Defendant's silence or his failure to admit to the crime. That conclusion is one which the Court draws from its interpretation of the judge's words.

¶31    I would affirm.


/S/ JIM RICE

13