# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 74713-4-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| TERRI LYNN HUIZENGA, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 3, 2017 |
| | ) | |

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED
2017 APR -3 AM 10: 58

DWYER, J. — Terri Huizenga appeals from the judgment entered on a jury's verdict finding her guilty of one count of felony harassment and one count of assault in the third degree. Huizenga contends that at sentencing the court deprived her of her constitutional right against self-incrimination by denying her request for a first-time offender waiver. This is so, she asserts, because the sentencing court, after listening to her voluntary allocution, determined that she did not acknowledge responsibility for her criminal misconduct, denied her request for a first-time offender waiver, and imposed a standard range sentence. We find her argument to be unavailing. However, the State concedes that this matter must be remanded to the sentencing court in order for Huizenga to request that her two convictions be treated as stemming from the same criminal conduct. Accordingly, we so order.

I

Terri Huizenga and Albert Huizenga were married in 2006 and separated in 2014. During the course of the divorce proceedings, Huizenga[1] lived in the marital home while Albert lived on their 32-foot boat, which was moored in a marina. Albert was dating another woman, Rachel Zima.

One evening, after a night of drinking, Albert and Zima returned to the boat and went to bed. Around 1:30 a.m., they were awakened by the sound of another person on the boat. Albert believed it to be Huizenga. Without leaving the bed, Albert announced that he and Zima were there and asked that Huizenga leave. Huizenga, who was indeed on the boat, telephoned 911 and asked that the police come to the marina and remove Zima from the boat.

Huizenga then entered the sleeping area and began to use her cellular phone to take photographs of Albert and Zima in bed. When Zima grabbed the phone from Huizenga's hand, Huizenga responded by grabbing Zima by the hair. Huizenga then pulled Zima out of the bed and, in the resulting fracas, both women fell off of the boat, onto the concrete dock, and into the water. During this exchange, Zima felt a twinge of pain in her arm. While in the water, Huizenga repeatedly pushed Zima's head underwater and told Zima that she wanted to kill her.

The police arrived within 10 minutes of Huizenga's 911 call and found the women struggling against each other in the water. One police officer observed that all three individuals at the scene appeared to be highly intoxicated. While

---

[1] When we refer to Huizenga, we refer to Terri Huizenga.

attempting to leave the water, Zima indicated that her arm hurt. The police arrested Huizenga soon thereafter. A radiologist's exam of Zima's arm concluded that her elbow had been dislocated.

Huizenga was charged with one count of assault in the second degree, a class B felony, pursuant to RCW 9A.36.021(1)(a),[2] one count of felony harassment, a class C felony, pursuant to RCW 9A.46.020(1)(a)(i),[3] and one count of vehicle prowl in the first degree, a class C felony, pursuant to RCW 9A.52.095(1).[4]

A jury found Huizenga guilty of felony harassment and the lesser crime of assault in the third degree, pursuant to RCW 9A.36.031(1)(d).[5]

---

[2] RCW 9A.36.021 reads, in pertinent part:
(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
    (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm . . .

    . . . .
    (2)(a) Except as provided in (b) of this subsection, assault in the second degree is a class B felony.
[3] RCW 9A.46.020 reads, in pertinent part:
(1) A person is guilty of harassment if:
    (a) Without lawful authority, the person knowingly threatens:
    (i) To cause bodily injury immediately or in the future to the person threatened or to any other person . . .

    . . . .
    (2)(a) Except as provided in (b) of this subsection, a person who harasses another is guilty of a gross misdemeanor.
    (b) A person who harasses another is guilty of a class C felony if any of the following apply: . . . (ii) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person.
[4] The State dismissed the single count of vehicle prowl prior to trial.
[5] RCW 9A.36.031 reads, in pertinent part:
(1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:

    . . .
    (d) With criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm.

- 3 -

At the subsequent sentencing hearing, due to Huizenga's lack of a felony criminal history, the State recommended the imposition of a standard range sentence at the midpoint of the range. Huizenga's counsel sought a lesser sentence, requesting that the court grant Huizenga a first-time offender waiver sentence. Huizenga's counsel then indicated that Huizenga would like to address the court.

The sentencing judge turned to Huizenga and stated, "I would be happy to hear from you. You are welcome to speak. You don't need to but your comments are acceptable."

Huizenga then began an allocution wherein she detailed that she believed she was the victim.

> *When I went there that night, I went for peace and solitude and that's all I have done.* I have been depressed and I suffer from anxiety and I have been diagnosed with PTSD due to the abuse I have suffered.
> *So I plead with the court that you can see that this was not intentional. I will fight it to the highest appeal court. . . .* They busted my nose. It goes on and on and the appeal court will hear that and I have proof and documentation and my doctor records.
> They are looking for restitution. Sir, I'm already up in the hundreds of thousands of dollars of medical expenses I have endured, not even counting my court, my attorney, and so on and so forth. *I can't even proceed with my own health to get well because of what these people have done to my life and to my family's life. . . . And it will not end with these people until justice is done with them.* I tried to keep peace and keep my own. I'm appalled about the outcome. I wanted to say more but I'm getting too emotional.

(Emphasis added.)

At that point, the sentencing judge inquired, "So in your opinion the charges that the jury convicted of you [sic] are all the fault of Mr. Huizenga?" Huizenga replied that that she was not intoxicated that night and that, instead,

> *I stumbled across people that had been drinking all day, no way expecting them to be there.* I made multiple calls before I went. *I saw no vehicles when I got there and I went down for peace and quiet to have my life almost end.* When the pictures are shown with the bruises around my neck, the lacerations all over any [sic] body and bruises from head to toe, it will show the jury. *I didn't have that opportunity in this case but I will get my day in court and you will see all I did was hang on for my dear life by hanging on to her hair with the two of them beat the living pulp out of me and I have pictures of doctor's reports from head to toe to verify that.*

(Emphasis added.)

The sentencing court denied Huizenga's request for a first-time offender waiver sentence.

> I do not believe this is an appropriate case for a first[-time] offender waiver. Nothing I have seen thus far, and clearly nothing I have heard today, shows in any way that Ms. Huizenga has taken any action to acknowledge any responsibility whatsoever for these crimes [for] which she has been convicted by a jury.

The court then sentenced Huizenga to a standard range sentence of 6 months of confinement and 12 months of community custody.

II

Huizenga contends that the sentencing court deprived her of her federal and state constitutional right against self-incrimination by denying her request for a first-time offender waiver sentence. The sentencing court erred, she asserts, because the court denied her waiver request and imposed a standard range sentence after listening to her voluntary allocution and determining that she did not acknowledge responsibility for her criminal conduct.

"Generally, a defendant cannot appeal a sentence within the standard range." State v. Osman, 157 Wn.2d 474, 481, 139 P.3d 334 (2006) (citing RCW 9.94A.585(1); State v. Garcia-Martinez, 88 Wn. App. 322, 329, 944 P.2d 1104 (1997)). However, "[a] defendant may appeal a standard range sentence if the sentencing court failed to comply with procedural requirements of the [Sentencing Reform Act] or constitutional requirements." Osman, 157 Wn.2d at 481-82 (citing State v. Mail, 121 Wn.2d 707, 711-13, 854 P.2d 1042 (1993); State v. Onefrey, 119 Wn.2d 572, 574, 835 P.2d 213 (1992); State v. Herzog, 112 Wn.2d 419, 423, 771 P.2d 739 (1989); State v. McNeair, 88 Wn. App. 331, 336, 944 P.2d 1099 (1997)).

"The Fifth Amendment Self-Incrimination Clause, which applies to the States via the Fourteenth Amendment, provides that no person 'shall be compelled in any criminal case to be a witness against himself.'" McKune v. Lile, 536 U.S. 24, 35, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002) (citation omitted) (citing Malloy v. Hogan, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964)). Article 1, section 9 of the Washington State Constitution provides that no person "shall be compelled in any criminal case to give evidence against himself." In this respect, the protection offered by the United States and Washington constitutions is coextensive. State v. Unga, 165 Wn.2d 95, 100, 196 P.3d 645 (2008).

The right against self-incrimination extends to sentencing proceedings. Mitchell v. United States, 526 U.S. 314, 325-27, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999) (citing Estelle v. Smith, 451 U.S. 454, 462, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981)). This is so, because, "[w]here the sentence has not yet been

imposed a defendant may have a legitimate fear of adverse consequences from further testimony." Mitchell, 526 U.S. at 326. "To say that she had no right to remain silent but instead could be compelled to cooperate in the deprivation of her liberty would ignore the Fifth Amendment privilege at the precise stage where, from her point of view, it was most important." Mitchell, 526 U.S. at 327.

However, the United States Supreme Court has clarified that "[t]he '[Fifth] Amendment speaks of compulsion'" and "the 'constitutional guarantee is only that the witness not be *compelled* to give self-incriminating testimony.'" McKune, 536 U.S. at 35-36 (quoting United States v. Monia, 317 U.S. 424, 427, 63 S. Ct. 409, 87 L. Ed. 376 (1943); United States v. Washington, 431 U.S. 181, 188, 97 S. Ct. 1814, 52 L. Ed. 2d 238 (1977)). Indeed, "[i]t is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." Mitchell, 526 U.S. at 321 (citing Rogers v. United States, 340 U.S. 367, 373, 71 S. Ct. 438, 95 L. Ed. 344 (1951)).

Huizenga was not deprived of her right against self-incrimination. She was told by the sentencing court that she was not required to speak, thus removing any compulsion to self-incriminate. Washington, 431 U.S. at 188 (advising grand jury witness of right to remain silent eliminated possibility of compulsion to self-incriminate).

Nonetheless, Huizenga chose to allocute. Her allocution did not impress the sentencing court. Huizenga cannot now invoke her right against compelled self-incrimination to protect herself from her own statements, voluntarily made.

Washington, 431 U.S. at 188 ("Indeed, it seems self-evident that one who is told he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled.").

Thus, Huizenga has not established that the sentencing court violated her Fifth Amendment right against compelled self-incrimination in sentencing her. Accordingly, she presents no constitutional ground authorizing her appeal from a standard range sentence.[6]

The right of allocution has been recognized in our state since its inception. In re Pers. Restraint of Echeverria, 141 Wn.2d 323, 333-35, 6 P.3d 573 (2000). The initial statute, last recodified as former RCW 10.64.040 (1950) read, in pertinent part: "When the defendant appears for judgment, he must be . . . asked whether he have [sic] any legal cause to show why judgment should not be pronounced against him." See also PIERCE'S CODE TITLE 135, § 1243 (1912); HILL'S CODE OF PROC. § 1339 (1891).

Subsequently, former RCW 10.64.040 was substantially replaced by former CrR 7.1(a)(1) (1973), which read:

> **(a) Sentencing.**
> *(1) Imposition of Sentence.* Sentence shall be imposed or an order deferring sentence shall be entered without unreasonable delay. Pending such action the court may release or commit the defendant, pursuant to CrR 3.2. *Before disposition the court* shall afford counsel an opportunity to speak and *shall ask the defendant if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.*

---

[6] Nonetheless, Huizenga relies on State v. Shreves, 60 P.3d 991 (Mont. 2002), in support of her contention that she was deprived of her right against self-incrimination. However, because Shreves dealt with whether an adverse inference may be drawn from a criminal defendant's *silence* at sentencing, that decision in no way supports her request for appellate relief.

(Emphasis added.)

The legislature formally repealed former RCW 10.64.040 after the enactment of the Sentencing Reform Act of 1981 and codified its replacement as former RCW 9.94A.110 (1984). This provision was then recodified in 2001 as RCW 9.94A.500, and is now in effect. RCW 9.94A.500 reads, in pertinent part:

> **Sentencing hearing—Presentencing procedures.** . . . Before imposing a sentence upon a defendant, the court shall conduct a sentencing hearing. . . .
> . . . .
> *The court shall* consider the risk assessment report and presentence reports, if any, including any victim impact statement and criminal history, and *allow arguments from* the prosecutor, the defense counsel, *the offender*, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer *as to the sentence to be imposed.*

(Emphasis added.) Thus, "[s]ince its establishment as a state, the State of Washington has provided defendants with a right of allocution." Echeverria, 141 Wn.2d at 333-34.

Our Supreme Court has affirmed that allocution is "a significant aspect of the sentencing process" that a sentencing court "should scrupulously follow." Echeverria, 141 Wn.2d at 336-37. Indeed, nothing has lessened "'the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.'" State v. Happy, 94 Wn.2d 791, 793-94, 620 P.2d 97 (1980) (quoting Green v. United States, 365 U.S. 301, 304, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961)). See also State v. Harris, 57 Wn.2d 383, 388-89, 357 P.2d 719 (1960).

Nonetheless, Huizenga asserts that the sentencing court erred by—in any way—considering her statements in allocution while determining whether to impose a standard range sentence or an alternative sentence. All that a court can properly consider, Huizenga urges, is the defendant's criminal history and the seriousness level of the offense at issue. Huizenga acknowledges that, pursuant to her assertion, a sentencing court could not consider a stirring allocution by a defendant revealing a deep and sincere sense of remorse for past misconduct. Huizenga further acknowledges—as she must—that her vision for sentencing would bar a sentencing court from taking heed of a defendant's defiant statement in allocution whereby the defendant pledges to again commit the same crime—or worse—as soon as possible. This, of course, is not the law.

In calculating the standard sentence range for a felony offense, the sentencing court must consider the defendant's criminal history and the seriousness of the criminal offense. RCW 9.94A.505(1), (2)(a), .510, .517. However, the first-time offender waiver statute, RCW 9.94A.650, provides, in pertinent part: "In sentencing a first-time offender the court *may* waive the imposition of a sentence within the standard sentence range." RCW 9.94A.650(2) (emphasis added).[7]

---

[7] RCW 9.94A.650 reads in its entirety as follows:
**First-time offender waiver.** (1) This section applies to offenders who have never been previously convicted of a felony in this state, federal court, or another state, and who have never participated in a program of deferred prosecution for a felony, and who are convicted of a felony that is not:
    (a) Classified as a violent offense or a sex offense under this chapter;
    (b) Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance classified in Schedule I or II that is a narcotic drug or flunitrazepam classified in Schedule IV;

Whether to grant a request for a first-time offender waiver sentence is thus discretionary. Had the legislature intended to restrict the sentencing court to considering only the same factors as are used to determine the standard range (criminal history and seriousness level) then the result would necessarily be the same in all cases. All eligible defendants would be similarly situated and all would have to be treated alike—all would get the first-time offender waiver or none would. Any distinction made between members of the eligible defendant group would necessarily be made for no reason and would, therefore, be unlawfully arbitrary.

But the legislature did not provide for this. Instead, it provided for a mechanism whereby a defendant's criminal history and the seriousness of the offense are applicable to determining the standard range. Then, by separate statute, the legislature allowed for a subset of all first-time offenders to petition for grace at sentencing. The court was granted discretion to determine who among

---

(c) Manufacture, delivery, or possession with intent to deliver a methamphetamine, its salts, isomers, and salts of its isomers as defined in RCW 69.50.206(d)(2);

(d) The selling for profit of any controlled substance or counterfeit substance classified in Schedule I, RCW 69.50.204, except leaves and flowering tops of marihuana; or

(e) Felony driving while under the influence of intoxicating liquor or any drug or felony physical control of a vehicle while under the influence of intoxicating liquor or any drug.

(2) In sentencing a first-time offender the court may waive the imposition of a sentence within the standard sentence range and impose a sentence which may include up to ninety days of confinement in a facility operated or utilized under contract by the county and a requirement that the offender refrain from committing new offenses.

(3) The court may impose up to six months of community custody unless treatment is ordered, in which case the period of community custody may include up to the period of treatment, but shall not exceed one year.

(4) As a condition of community custody, in addition to any conditions authorized in RCW 9.94A.703, the court may order the offender to pay all court-ordered legal financial obligations and/or perform community restitution work.

such offenders should be granted grace and from whom such grace should be withheld. By granting such discretion, the legislature plainly allowed for the court to consider factors other than those applicable to establishing the standard range or determining eligibility to make such a first-time offender request.[8]

RCW 9.94A.650(2) does not delineate the factors that a court may properly consider in exercising the discretion bestowed. But there is no doubt that the legislature was aware of the statutory right to allocute at sentencing. Thus, we have no doubt that a sentencing court may consider the allocution, if any, in exercising its discretion.

Huizenga's contrary argument would reduce a defendant's allocution to a meaningless, ineffective charade. She points to no authority that would justify

---

[8] In the Revised Code of Washington the subsection that sets forth the first-time offender waiver statute is found immediately below the heading "Sentencing Alternatives." See RCW 9.94A.650. That subsection is thereafter followed by other subsections setting forth alternative sentencing provisions. See RCW 9.94A.650-.690. Whether such a sentencing alternative also constitutes an "exceptional sentence downward" is unclear and unimportant to resolving the issues presented.

A review of our case authority makes it unclear whether a sentence granted pursuant to the waiver statute constitutes an exceptional sentence downward, a type of alternative sentence—akin to the drug offender sentencing alternative, RCW 9.94A.660, or the special sex offender sentencing alternative, RCW 9.94A.670—or another type of sentence entirely. Compare State v. Ha'mim, 132 Wn.2d 834, 845, 940 P.2d 633 (1997) (describing the first-time offender waiver statute as concerning the grant of an exceptional sentence downward), overruled on other grounds by State v. O'Dell, 183 Wn.2d 680, 696, 358 P.3d 359 (2015); State v. Freitag, 127 Wn.2d 141, 144 n.2, 896 P.2d 1254, 905 P.2d 355 (1995) ("The sentencing guidelines provide that an exceptional sentence may be imposed for some first-time offenders."); State v. Gaines, 65 Wn. App. 790, 793 n.1, 830 P.2d 367 (1992) ("Under two other exceptions not applicable here, the court may also impose an exceptional sentence in cases involving first-time and sexual offenders."), reversed on other grounds, 122 Wn.2d 502, 859 P.2d 36 (1993), with State v. Stately, 152 Wn. App. 604, 606 n.2, 216 P.3d 1102 (2009) ("The sentence imposed under the first-time offender provision is not an exceptional sentence but is, rather, a waiver of the standard sentence range."), review denied, 168 Wn.2d 1015 (2010); State v. Gamble, 146 Wn. App. 813, 816-17, 192 P.3d 399 (2008) ("RCW 9.94A.650, the statutory provision pursuant to which Gamble was sentenced, allows first-time offenders who meet certain conditions to receive alternative sentences."); State v. McNeair, 88 Wn. App. 331, 341, 944 P.2d 1099 (1997) (the [drug offender sentencing alternative] classification is very similar to that in the first-offender alternative provided for by [former] RCW 9.94A.120(5) [(1981)]."); State v. Archambault, 86 Wn. App. 711, 712-13, 937 P.2d 1323 (contrasting waiving a sentence for a first-time offender with imposing a standard range sentence or an exceptional sentence), review denied, 133 Wn.2d 1025 (1997).

such a result.

Huizenga's request for relief on the bases stated is denied.

III

Huizenga next asserts that her trial counsel provided constitutionally ineffective assistance. This is so, she argues, because her attorney did not argue at the sentencing hearing that the conduct underlying the third degree assault and felony harassment convictions involved the same criminal conduct. The State concedes error. We accept the State's concession.

On remand, we do not direct the sentencing court to reach a particular determination. Rather, we remand to allow Huizenga's counsel to make the argument referenced and seek relief. On the record then presented to the superior court, that court can make its decision.

IV

Huizenga requests that no appellate costs be assessed against her. The State concedes that no appellate costs should be assessed. We accept the State's concession.

Affirmed, in part, and remanded for further proceedings.

We concur: