[No. 10635-7-III.   Division Three.   November 24, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANCISCO GUADALUPE GARIBAY, *Appellant.*

*Thomas Bothwell* and *Prediletto, Halpin, Sharnikow & Bothwell, P.S.,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Patricia D. Powers, Deputy,* for respondent.

SHIELDS, C.J. — Francisco Guadalupe Garibay was charged with one count of first degree rape of a child, RCW 9A.44.073. He was convicted and sentenced to an excep-

tional sentence of 180 months. He appeals, contending the court erred (1) in failing to sentence him within 40 days of his conviction and (2) in imposing an exceptional sentence. We affirm the conviction and the exceptional sentence, but remand for reconsideration of its length.

The 4-year-old rape victim lived in an apartment with her mother, younger brother, two other women and another child. The victim's mother knew Mr. Garibay, who had occasionally been at her home and toward whom the victim was openly affectionate.

On September 6, 1989, the mother discovered the victim had a vaginal discharge, and took her to a physician who initially diagnosed a yeast infection. However, on September 8, culture of the discharge revealed the victim was infected with Neisseria gonococcal bacteria. The victim and her mother returned to the hospital for treatment. Health care providers and the police questioned the victim. She initially denied any sexual contact had occurred, but finally identified Mr. Garibay, whom she knew as "Gaudie", as the person who had touched her on her front vaginal area with his "peetie". The court ordered Mr. Garibay tested. On September 15, the test revealed he was suffering from gonorrhea. He denied knowing he had the disease and having sexual contact with the victim.

## I
### TIMELINESS OF SENTENCING

Mr. Garibay contends the trial court erred by sentencing him 77 days after conviction, thereby failing to comply with RCW 9.94A.110[1] and violating his right to a timely sentencing. He seeks a sanction for the violation.

■ Following conviction on December 8, 1989, a presentence report was ordered. The investigating officer inter-

---

[1]RCW 9.94A.110, in pertinent part, states: "The sentencing hearing shall be held within forty court days following conviction. Upon the motion of either party for good cause shown, or on its own motion, the court may extend the time period for conducting the sentencing hearing. The court shall order the department to complete a presentence report before imposing a sentence upon a defendant who has been convicted of a felony sexual offense."

viewed Mr. Garibay 40 days later on January 19, 1990; the report is dated January 27. At the sentencing hearing on February 23, Mr. Garibay did not raise the issue of delay nor assert he was prejudiced by it; he was given credit for all time served prior to sentencing. The extension of time for sentencing is discretionary with the trial court. That discretion was properly exercised here.

## II
### JUSTIFICATION OF AN EXCEPTIONAL SENTENCE

Mr. Garibay contends the court's reasons for imposing an exceptional sentence are either unsupported by the record or are not factors which may be used in support of an exceptional sentence.

The court's reasons for the exceptional sentence can be summarized as: (1) particular vulnerability due to extreme youth; (2) abuse of trust; (3) deliberate cruelty; and (4) lack of remorse.

■ In reviewing an exceptional sentence, we first determine whether the sentencing court's reasons are supported by the record. RCW 9.94A.210(4)(a); *State v. McAlpin*, 108 Wn.2d 458, 462-63, 740 P.2d 824 (1987); *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986). This is a factual question; the sentencing court's reasons will be upheld unless they are clearly erroneous. Second, we independently determine whether the sentencing court's reasons justify an exceptional sentence. RCW 9.94A.210(4)(a). This is a legal question; the reasons given must not take into account factors which are necessarily considered in computing the presumptive range for the offense. Last, we examine whether the sentence imposed was clearly excessive. *McAlpin*, at 467. We review each reason according to those standards.

1. Particular Vulnerability Due to Extreme Youth.[2] Mr. Garibay points out the victim's age is considered in comput-

---

[2]Finding of fact 1 states:
"The victim is a young child of four years of age which rendered her particularly vulnerable and incapable of resistance to the Defendant's actions and the Defendant obviously knew of this vulnerability."

ing the presumptive range for the offense of first degree rape of a child. He argues the victim's particular vulnerability is not distinguishable from other children presumably contemplated by the Legislature when it crafted the standard range for first degree rape of a child. The Sentencing Reform Act of 1981, however, lists extreme youth as an aggravating circumstance:

> The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health.

RCW 9.94A.390(2)(b).

■ When analyzing particular vulnerability, the focus is on the victim: Was the victim more vulnerable to the offense than other victims due to extreme youth, advanced age, disability, or ill health and did the defendant know of that vulnerability? *State v. Jones*, 59 Wn. App. 744, 801 P.2d 263 (1990), *review denied*, 116 Wn.2d 1021 (1991); *State v. Jackmon*, 55 Wn. App. 562, 566-67, 778 P.2d 1079 (1989).

First degree rape of a child, RCW 9A.44.073, requires that the victim be less than 12 years of age. As a general rule, use of the victim's age to justify an exceptional sentence when age constitutes an element of the crime is not warranted because age is already factored into the sentencing guidelines. *State v. Wood*, 42 Wn. App. 78, 80, 709 P.2d 1209 (1985), *review denied*, 105 Wn.2d 1010 (1986).

*State v. Fisher*, 108 Wn.2d 419, 739 P.2d 683 (1987) affirmed an exceptional sentence for an indecent liberties offense[3] involving a 5½-year-old boy. *Fisher*, at 424, reasoned

> [v]ictims of this crime range widely in age from 0 to 14 years. To prohibit consideration of the age of the victim in a particular case in sentencing would be to assume that all victims of this offense were equally vulnerable regardless of their age, an unrealistic proposition.

On the other hand, *State v. Woody*, 48 Wn. App. 772, 777, 742 P.2d 133 (1987), *review denied*, 110 Wn.2d 1006 (1988)

---

[3]The offense required that the victim be under 14 years of age.

held a 7-year-old school age victim of indecent liberties was not "particularly vulnerable", pointing out school age children have "achieved a level of reason that sets them apart from younger children." In turn, *State v. Stevens*, 58 Wn. App. 478, 794 P.2d 38, *review denied*, 115 Wn.2d 1025 (1990) held a 3-year-old victim of statutory rape in the first degree was particularly vulnerable. *See also State v. Tunell*, 51 Wn. App. 274, 753 P.2d 543, *review denied*, 110 Wn.2d 1036 (1988), *overruled on other grounds in State v. Batista*, 116 Wn.2d 777, 808 P.2d 1141 (1991).

■ This line of cases suggests adherence to the sentencing principle that when age is an element of the crime it may also be used as justification for departure from the standard sentencing range if the extreme youth of the victim in fact distinguishes the victim significantly from other victims of the same crime. D. Boerner, *Sentencing in Washington* § 9.7, at 9-14 (1985).

The record supports the court's finding: the victim was particularly vulnerable due to her extreme youth and Mr. Garibay knew of this vulnerability. The court's reasons justify an exceptional sentence. *Fisher*, at 424.

■ ■ 2. Abuse of Trust.[4] When analyzing abuse of trust, the focus is on the defendant: Did the defendant use a position of trust to facilitate the commission of the offense? RCW 9.94A.390(2)(c)(iv); *State v. Stevens, supra* at 501.

The use of a position of trust need not be intentional; it may occur when a person acts inconsistently with a standard of care expected of those in a position of trust. *State v. Chadderton*, 119 Wn.2d 390, 832 P.2d 481 (1992). The trust relationship may exist between the perpetrator and the child's primary care giver who entrusts the child's care to the perpetrator, or between the child victim, who has a tendency to trust, and the perpetrator, who preys upon this tendency. *State v. Grewe*, 117 Wn.2d 211, 220-21, 813 P.2d

---

[4]Finding of fact 2 states:
"The Defendant asked the victim to call him "Poppy", promised her a coat and placed himself in a position of trust and confidence with the victim in order to further the commission of his crime."

1238 (1991). The court's stated finding is supported by the record. Additionally, the record reveals the victim here had a tendency to trust Mr. Garibay, who preyed upon it. The record justifies an exceptional sentence based upon abuse of trust.

3. <u>Deliberate Cruelty</u>.[5] The trial court found Mr. Garibay knew he had gonorrhea in an active stage and knowingly transmitted it to support deliberate cruelty as a reason for the exceptional sentence. Mr. Garibay contends the record does not support a finding he knew he had gonorrhea at the time of the offense. We agree.

The information charging Mr. Garibay states he had sexual contact with the victim "between August and September, 1989". The physician who tested him stated the incubation period for the disease is 3 to 7 days during which the patient is asymptomatic. When tested on September 15, Mr. Garibay had a definite gonorrhea clinical picture and, based on the localization of the disease, he had the disease for a week or two. Thus, according to the physician's testimony, the earliest the symptoms would have been present in Mr. Garibay is September 8, and the earliest the disease would have occurred is September 1. The physician who examined the victim stated she did not have the disease for more than 2 weeks at the time she was tested on September 6. Therefore, she could not have acquired the disease prior to August 24.

■ Even giving the State the benefit of an inference the entire months of August and September are included in the information phrase "between August and September, 1989", Mr. Garibay could not know, from the facts established at trial, any earlier than September 8, 1989, he had the disease. By that date the victim already had the disease, and it had been positively diagnosed. The court's finding concern-

---

[5]Finding of fact 3 states:

"The Defendant suffered from gonorrhea in an active stage and in all likelihood knew he suffered this disease when he raped the child."

Conclusion of law 2 states:

"The defendant was deliberately cruel in transmitting an infectious venereal disease which he suffered in an active stage."

ing Mr. Garibay's knowing transmission of gonorrhea is unsupported by the record and clearly erroneous.

4. Lack of Remorse.[6] At the sentencing hearing the court noted Mr. Garibay had not expressed any remorse to the investigating officer who prepared the presentence report. Mr. Garibay argues the sentencing court's use of lack of remorse as an aggravating factor to justify an exceptional sentence violates his constitutional right to assert his innocence and remain silent.

■ The cases relied upon by the State,[7] are distinguishable. The mundane lack of remorse found in run-of-the-mill criminals is not sufficient to aggravate an offense; the lack of remorse must be aggravated or egregious. *See State v. Wood*, 57 Wn. App. 792, 800, 790 P.2d 220, *review denied*, 115 Wn.2d 1015 (1990). The record and the presentence report do not establish any conduct by Mr. Garibay which may be characterized as an aggravated or egregious lack of remorse. The presentence report in fact recommends Mr. Garibay be sentenced to the high end of the standard range. The record of the sentencing hearing establishes only that a non-English speaking defendant was having difficulty communicating with the court.[8]

---

[6]Finding of fact 4 states:
"The Defendant has not manifested or expressed any remorse whatsoever for his conduct."

[7]*State v. Wood*, 57 Wn. App. 792, 800, 790 P.2d 220, *review denied*, 115 Wn.2d 1015 (1990); *State v. Creekmore*, 55 Wn. App. 852, 860-62, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990); *State v. Ratliff*, 46 Wn. App. 466, 468-70, 731 P.2d 1114 (1987).

[8]At the sentencing hearing the court asked Mr. Garibay, who was speaking through an interpreter:
"THE COURT: Okay. Mr. Garibay, do you have anything you want to say to me?
"THE DEFENDANT: Yes.
"THE COURT: Go ahead.
"THE DEFENDANT: Well, I never knew I had —
"THE COURT: Just a second. Would you come on up here, please? Go ahead.
"THE DEFENDANT: I never knew that I had gonorrhea, and — well, that sentence they want to give me was a lot of time.
"THE COURT: What was the first statement he made? He never knew that he had —

■ Furthermore, Mr. Garibay has a constitutional right to remain silent, and the sentencing court's use of silence to show "lack of remorse" as an aggravating factor violates that right; it is tantamount to requiring him to admit he is guilty of the crime charged. Trial courts may not use a defendant's silence or continued denial of guilt as a basis for justifying an exceptional sentence.

## III
### THE EXCEPTIONAL SENTENCE IMPOSED

■ The standard range for Mr. Garibay's offense is 51 to 68 months. The sentence imposed was 180 months, which is nearly three times the high end of the standard range. The exceptional sentence imposed is justified by two aggravating circumstances, the victim's particular vulnerability due to extreme youth and abuse of trust. We are unable to determine whether those circumstances, without consideration of the unsupported finding of deliberate cruelty and the unjustified basis of lack of remorse, would have resulted in the exceptional sentence imposed.

We affirm the conviction and the exceptional sentence, but remand for reconsideration of its length.

MUNSON and SWEENEY, JJ., concur.

---

"THE INTERPRETER: That he had gonorrhea.
"THE COURT: Anything else?
"THE DEFENDANT: Well, yes. Now, this problem that they're trying to give me here, they tell me my mother's in the hospital because of this problem. Well, I sincerely — it's a lot of time they want to give me.
"THE COURT: Anything else?
"THE DEFENDANT: (Shakes head.)"