**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>          v.<br><br>DAVID M. PUTMAN,<br><br>               Appellant. | No. 84862-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — David Putnam was convicted of three counts of first degree rape of a child, one count of first degree child molestation, and one count of second degree child molestation. This court affirmed his convictions but remanded for resentencing. Putman remained silent during his resentencing and the trial court imposed a standard range sentence. Putman again appeals and argues the trial court improperly considered his silence at resentencing in violation of his constitutional right against self-incrimination. Putman also challenges several conditions of community custody, the duration of the sexual assault protection order, and the imposition of certain legal financial obligations (LFOs). We affirm Putman's standard range sentence and remand to correct only the sentencing errors discussed below.

I

In 2016, Putman was charged with three counts of first degree rape of a child, one count of first degree child molestation, and one count of second degree child molestation of his daughter A.P. The charges were based on events from the time A.P. was born in 1993, until her twelfth birthday. In 2016, Putman turned himself in to police and admitted to grooming A.P., touching her breasts and vagina, and having her perform oral sex on him. A jury found Putnam guilty on all counts and he was sentenced to concurrent indeterminate sentences of 270 months to life for the rape convictions, 198 months to life for the first degree child molestation, and a determinate sentence of 116 months for the second degree child molestation. The trial court also imposed lifetime community custody and a sexual assault protection order (SAPO) prohibiting Putman from contact with A.P. until 2119.

We affirmed Putnam's convictions, but remanded for resentencing based on the version of the Sentencing Reform Act of 1981, ch. 9.94A RCW, in effect at the earliest moment the crimes could have occurred and to adjust the duration of community custody and the SAPO accordingly. State v. Putman, 21 Wn. App. 2d 36, 55, 504 P.3d 868 (2022). Resentencing was also "required to recalculate Putman's offender score . . . to set Putman's early release rate at 15 percent . . . [and] to strike the random urinalysis community custody condition because it is not crime-related." Putman, 21 Wn. App. 2d at 52 n.40.

On remand, the State identified the standard range of 210 to 280 months for the three counts of first degree child rape and sought a sentence of 270 months. Putman sought a sentence of 210 months.

At the resentencing hearing, A.P., her brother, and their mother submitted victim impact statements which were read aloud by the prosecutor. The statement of A.P.'s mother included quotes from letters she received from Putman:

> The main thing to be considered is his state of mind, and if it is safe for him to be free. I will use his own words from the letters he wrote since he was convicted to show that the answer continues to be no. These are quotes from his letters. Quote, 'I was shocked by the jury's decision and even more shocked by the total abandonment of my family . . .
>
> I thought each of you, including [A.P.], would realize that either most of her memories were false memories, or she would realize she had allowed her revenge to go too far,' unquote. Quote, 'Yes, I will be appealing my convictions. Justice was not served. I had some wrongdoing but nothing that would warrant rape charges . . .
>
> At this point, I don't believe [A.P.]'s memories are false memories. They are purposeful embellishments and exaggerations to mean an objective. She should enjoy her victory in this first trial if it allows her to finally seek the professional psychological help she truly needs.'

On advice of his counsel, Putman did not address the trial court because of an appeal pending at the time.

The record before the trial court included a letter written by Putman to the court prior to his first sentencing in 2020. Putman wrote:

> I am not guilty of these crimes. . . . I thought wrongly that the jury had heard enough to realize my family had allowed the prosecutor to overcharge to take me out of their lives for as long as possible.
>      . . . .
> I treated all my daughters and sons the same . . . but due to the one mistake I had made when she was six or seven years old, she questioned whether I truly loved her like the rest of my kids. And then she heard that I had threatened divorce and the breakup of our family and she decided to take revenge.

The record also included statements made by the family at the first sentencing hearing detailing Putman's behavior since his conviction. For example, A.P.'s brother stated,

-3-

"[t]o this day, [Putman] still attempts to portray [A.P.] as the villain, continuously blaming her for our family being broken."

The trial court summarized its reasoning behind its resentencing:

One of the things that's really, uh, troubling here is that both Mr. Putman from—and I realize he did not address me in person, but I have a—I have his words in a number of—of places in terms of his letter to the Court at the time of the original sentencing and his letters to his family. And what I'm really struck by here is a lack of accountability, a lack of responsibility. And I also have his words to the police at the time he made his confession. And while at that point he did not, uh, 100 percent agree with everything that his daughter was saying, in large part he did agree with a lot of the allegations. And it appears that since then rather than sort of taking further accountability, he's taking less and less accountability, and that's troublesome to me, and that suggests to me that, uh, he would be a danger to the [technical interruption]

. . . .

in large part he acknowledged that there had been multiple incidences of sexual contact, and he didn't, uh, completely agree with all of the aspects, but he did acknowledge a fairly extensive history. And since that time, uh, it appears that he's moved backwards rather than moving forward and is not accepting accountability.

. . . .

I do bear in mind, however, that Mr. Putman is aging and the danger he poses is likely to decline further as he ages . . . the crimes themselves I think build in, frankly, the horrific nature of the crime and the horrific impact that they have on victims. And—while I think—that Mr. Putman's ongoing denial and lack of accountability, it, uh, also plays a role here in my decision-making. I believe that these, uh, closer to the high end sentences are appropriate.

The trial court imposed concurrent determinate sentences of 260 months for the three counts of first degree rape of a child, and 180 months and 110 months for the child molestation convictions. The court also ordered Putman to pay a victim penalty assessment (VPA) and a DNA collection fee.

The trial court imposed 24 months of community custody with the following conditions relevant here:

STANDARD CONDITIONS
The Defendant shall comply with the following conditions of community custody, effective as of the date of sentencing unless otherwise ordered by the court.
6. Notify community corrections officer of any change in address or employment;
7. Upon request of the Department of Correction, notify the Department of court-ordered treatment . . .

SPECIAL CONDITIONS — SEX OFFENSES
Defendant shall:
1. Obey all municipal, county, state, tribal, and federal laws.
4. Within 30 days of release from confinement (or sentencing, if no confinement is ordered) obtain a sexual deviancy evaluation with a State certified therapist approved by your Community Corrections Officer (CCO) and follow all recommendations of the evaluator. If sexual deviancy treatment is recommended, enter treatment and abide by all programming rules, regulations and requirements. Attend all treatment-related appointments (unless excused); follow all requirements, conditions, and instructions related to the recommended evaluation/counseling; sign all necessary releases of information; and enter and complete the recommended programming.
5. Inform the supervising CCO and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such.
6. Obtain prior permission of the supervising CCO before changing work location.
7. If a resident at a specialized housing program, comply with all rules of that housing program.
8. Consent to DOC home visits to monitor compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which the offender lives or has exclusive /joint control/access.
10. Be available for and submit to urinalysis and/or breathanalysis upon request of the CCO and/or chemical dependency treatment provider.
12. Register as a Sex Offender with the sheriff['s] office in every county where you reside, attend school, or work, as required by law.

On December 19, 2022, Putman moved for reconsideration under CrR 7.8(b), arguing that the court used his silence against him during sentencing. Putman also argued that under CrR 7.8(b)(5) his behavior since being incarcerated—working hard

and completing college level courses—is reason for reconsideration of the sentence. Putman asked the court to resentence him to concurrent sentences of 210 months for the three counts of first degree rape of a child, and 149 months and 87 months for the child molestation convictions.

Putman appealed the amended judgment and sentence before the trial court could rule on his motion for reconsideration.

II

A

At the outset Putman argues that the trial court abused its discretion by failing to rule on his motion for reconsideration. But Putman asks that we directly consider the issue rather than remand the matter to the trial court.

RAP 7.2(e) requires that a post judgment motion "shall first be heard by the trial court, which shall decide the matter." Then, "[i]f the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision." RAP 7.2(e).

Here, the trial court erred by not deciding Putman's motion for reconsideration. But because the issue of Putman's silence being used against him in sentencing is a constitutional question which we would review de novo, it would be inefficient for this court to remand to the trial court for a ruling on the motion. State v. Sieyes, 168 Wn.2d 276, 281, 225 P.3d 995 (2010); see State v. Allyn, 63 Wn. App. 592, 596, 821 P.2d 528 (1991), overruled in part by In re Matter of Sietz, 124 Wn.2d 645, 880 P.2d 34 (1994). Thus, we directly consider and resolve the issues before us.

B

Putman argues the trial court violated due process and his right against self-incrimination by using his silence or denial of guilt as a basis for sentencing. Putman points to the trial court's statements about Putman's accountability and the phrasing "it appears that since then," "since that time," and "ongoing denial," to assert that his silence played a role in the sentencing and was improperly used to enhance his punishment. We disagree.

"[T]he fixing of legal punishments for criminal offenses is a legislative function." State v. Ammons, 105 Wn.2d 175, 180, 713 P.2d 719 (1986). This includes "'the acknowledged power of the legislature to provide a minimum and maximum term within which the trial court may exercise its discretion in fixing sentence.'" Ammons, 105 Wn.2d at 180 (quoting State v. Le Pitre, 54 Wash. 166, 169, 103 P. 27 (1909)). In determining a standard range sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. RCW 9.94A.530. The trial court may impose any sentence within the standard range that it deems appropriate. RCW 9.94A.530(2); State v. Herzog, 112 Wn.2d 419, 423-25, 771 P.2d 739 (1989). Generally, a standard range sentence cannot be appealed. RCW 9.94A.585. But a standard range sentence may be appealed if the sentencing court failed to follow procedural or constitutional requirements. State v. Osman, 157 Wn.2d 474, 481-82, 139 P.3d 334 (2006).

Under both the federal and state constitutions, no person may be compelled to be a witness against themselves. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. The right against self-incrimination extends to sentencing proceedings. Mitchell v. United

States, 526 U.S. 314, 326-27, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999). No negative inference from the defendant's failure to testify is permitted with regard to factual determinations respecting the circumstances and details of the crime.[1] Mitchell, 526 U.S. at 328. Post-conviction silence is also protected where testimony may result in greater punishment. State v. Strauss, 93 Wn. App. 691, 698, 969 P.2d 529 (1999) (citing State v. Tinkham, 74 Wn. App. 102, 108, 871 P.2d 1127 (1994)). For example, a trial court may not rely on a defendant's silence as the basis to impose an exceptional sentence. State v. Garibay, 67 Wn. App. 773, 782, 841 P.2d 49 (1992), abrogated on other grounds by State v. Moen, 129 Wn.2d 535, 919 P.2d 69 (1996).

Putman relies on Strauss and State v. Shreves, 2002 MT 333, 313 Mont. 252, 60 P.3d 991, to support his argument. In Strauss, Strauss asserted his right to remain silent and refused to answer questions or participate in psychological testing prior to resentencing. 93 Wn. App. at 695. Based on the presentence evaluations, the sex offender treatment provider concluded Strauss was not amenable to treatment. Strauss, 93 Wn. App. at 695-96. The trial court agreed with the treatment provider and imposed an exceptional sentence based on future dangerousness. Strauss, 93 Wn. App. at 696. On appeal, this court determined that the trial court erred because it specifically mentioned Strauss's denial of the offense as a factor showing nonamenability along with his refusal to participate in evaluations or treatment. Strauss, 93 Wn. App. at 699. This court held that Strauss's denials and silence were not proper bases to justify the exceptional sentence. Strauss, 93 Wn. App. at 699.

---

[1] The court in Mitchell did not address whether silence is indicative of lack of remorse or acceptance of responsibility for the purpose of sentencing under the federal guidelines. 526 U.S. at 330.

While not controlling on this court, in Shreves, the Montana Supreme Court addressed "whether the rule against a negative inference from silence at criminal trial applies to sentencing, when the defendant has maintained his innocence throughout the proceedings." 313 Mont. at 258. Because the trial court based its sentence in large part on Shreves's lack of remorse and inferred the lack of remorse from his silence, the Supreme Court reasoned:

> While we agree with the State that rehabilitation is an important factor to consider at sentencing as well, and, while we agree that lack of remorse can be considered as a factor in sentencing, we cannot uphold a sentence that is based on a refusal to admit guilt. To do so would reflect an inquisitorial system of justice rather than our adversarial system.

Shreves, 313 Mont. at 260. The Supreme Court concluded that the trial court improperly penalized Shreves for maintaining his innocence but added "we make clear that the trial court can consider as a sentencing factor a defendant's lack of remorse as evidenced by any admissible statement made by the defendant pre-trial, at trial, or post-trial." Shreves, 313 Mont. at 260.

Unlike both Strauss and Shreves, the trial court did not base its decision solely or even largely on Putman's silence. The court instead explicitly relied on Putman's prior statements. The trial court acknowledged that it did not have current statements from Putman. Instead, the trial court looked at Putman's statements to police in 2016 and then looked at his statements "since that time" in his letter to the court at his original sentencing and in the several letters to his family members. The trial court noted that while his lack of accountability was a factor in the decision, the nature of the crimes warranted a sentence in the higher end of the standard range. There is no indication the trial court made negative inferences based on Putman remaining silent at the

resentencing hearing. Instead, the basis for sentencing rested primarily on the nature of the crimes and Putman's statements made prior to resentencing and Putman concedes it was proper to consider his prior statements to police and those made in letters to his family. Moreover, Putman was sentenced within the standard range.

We conclude there was no violation of Putman's constitutional rights.

III

Putman contends several errors were made in the amended judgment and sentence and the SAPO. We address each in turn.

A

Putman argues that under the new determinate sentence and reduced term of community custody, the SAPO expiration date of July 10, 2119, is no longer lawful. We agree.

On remand following Putman's first appeal, our mandate to the trial court included revising the SAPO according to the amended sentence. Former RCW 7.90.150—and the current version, RCW 9A.44.210—provides that a SAPO issued with a criminal prosecution shall remain in effect for two years after the expiration of the sentence.

The State concedes the SAPO should have been amended on remand. Because the SAPO expires more than two years after Putman's sentence will expire, we accept the State's concession and remand to the trial court to amend the SAPO.

B

Putman argues the trial court applied the incorrect version of the SRA in imposing community custody conditions and thus those that are not crime related

prohibitions, and those that require affirmative conduct, are unauthorized. Putman

contends standard condition 7 and special conditions 1, 6, 7, 8, 10, and 12 must be

stricken. Putman also argues special conditions 4 and 5 must be stricken in part.

Putman asserts the correct version of the SRA to apply is the version before the June

1996 amendments took effect, former RCW 9.94A.120 (LAWS OF 1995, ch. 108 § 3,

effective Apr. 15, 1995).

The State concedes that community custody special conditions 1, 7, and 10

should be stricken. The State also concedes the trial court should have ordered

community custody conditions according to the former RCW 9.94A.120. We accept the

State's concessions.[2]

The former version of the SRA provides, in relevant part:

> (b) . . . Unless a condition is waived by the court, the terms of any
> community placement for offenders sentenced pursuant to this section
> shall include the following conditions:
> (i) The offender shall report to and be available for contact with the
> assigned community corrections officer as directed;
> (ii) The offender shall work at department of corrections approved
> education, employment, and/or community service;
> (iii) The offender shall not possess or consume controlled substances
> except pursuant to lawfully issued prescriptions;
> (iv) An offender in community custody shall not unlawfully possess
> controlled substances;
> (v) The offender shall pay supervision fees as determined by the
> department of corrections; and
> (vi) The residence location and living arrangements shall be subject to the
> prior approval of the department of corrections during the period of
> community placement; and

---

[2] Special condition 1 required Putman to obey all laws. Because this condition was not authorized prior to the 1999 version of the SRA, we accept the State's concession. Special condition 7 required Putman to comply with all rules of any specialized housing program he is a resident of. Because this condition was not authorized prior to the 1999 version of the SRA, we accept the State's concession. Special condition 10 required Putman to submit to urinalysis. The State previously conceded that the condition was not properly crime related and according to our mandate in Putman, 21 Wn. App. 2d at 52 n. 40, it should have been stricken on remand.

(c) The court may also order one or more of the following special conditions:
(i) The offender shall remain within, or outside of, a specified geographical boundary;
(ii) The offender shall not have direct or indirect contact with the victim of the crime or a specified class of individuals;
(iii) The offender shall participate in crime-related treatment or counseling services;
(iv) The offender shall not consume alcohol; or
(v) The offender shall comply with any crime-related prohibitions

RCW 9.94A.120(9).

Standard condition 7 required Putman, upon DOC request, to notify the DOC of court-ordered treatment. The State defends condition 7 by relying on State v. Riles, 135 Wn.2d 326, 957 P.2d 655 (1998), abrogated on other grounds by State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010). In Riles, the defendants in the two consolidated cases were convicted of sex offenses. The applicable version of the SRA provided that crime-related conditions could not include orders directing an offender to participate in rehabilitative or other affirmative conduct. The defendants challenged conditions of community placement requiring submission to polygraph and plethysmograph testing. Riles, 135 Wn.2d at 335-36, 338. The court considered the purposes of the SRA to "protect the public and to offer the offender an opportunity for self-improvement," and the later amendments to the SRA which confirmed the legislature's intent to allow conditions requiring affirmative acts necessary to monitor compliance with sentencing conditions. Riles, 135 Wn.2d at 341-43. The court concluded that conditions requiring polygraph and plethysmograph testing were permissible. Riles, 135 Wn.2d at 343-46. Here, because the trial court had the authority to impose treatment, it also had the authority to impose conditions necessary to monitor compliance such as notifying the

DOC of court ordered treatment.  Thus, the trial court properly imposed standard condition 7.

Special condition 4 required Putman to obtain an evaluation with a certified therapist within 30 days of release and, if sexual deviancy treatment was recommended, to enter and attend and abide by all rules of treatment.  Putman concedes the first sentence of this condition is authorized under former 9.94A.120(c)(iii), but argues the remainder is unauthorized because it imposes other requirements beyond "participation."  Our Supreme Court has held that express statutory authority to require treatment includes implied authority to require reasonable progress in treatment.  Riles, 135 Wn.2d at 351.  Because participation requires active involvement rather than just merely being present, the trial court had the authority to impose special condition 4 in its entirety.  Riles, 135 Wn.2d at 351.

Special condition 5 prohibited sexual contact until approved by a sexual deviancy treatment provider and required Putman to inform the CCO and treatment provider of any dating relationship, and to disclose sex offender status prior to sexual contact.  Putman concedes that the prohibition on sexual contact without approval is an authorized crime-related prohibition.  The State concedes the inform and disclose requirements involve affirmative conduct and thus are unauthorized under the former SRA.  We accept the State's concession and remand to strike special condition 5 in part.

Special condition 6 required that Putman obtain permission from the supervising CCO before changing work locations.  Former RCW 9.94A.120(9)(b)(ii) gives the DOC—and by extension the CCO—authority to approve employment.  Employment

includes the work location, therefore a CCO would have the authority to approve a work location. Putman also argues that because the trial court imposed standard condition 6, which required Putman to notify a CCO of any change in address or employment, that must mean special condition 6 required something more. Standard condition 6 is required under former RCW 9.94A.120(14)(a). The requirement to notify a CCO of a change in address or employment is distinct from the requirement to work for an employer—and at a location—approved by the DOC. Because former RCW 9.94A.120(9)(b)(ii) required Putman to work for an employer approved by the DOC, the trial court properly imposed special condition 6.

Special condition 8 required Putman to consent to DOC home visits to monitor compliance with supervision. The State relies on State v. Cates, 183 Wn.2d 531, 536, 354 P.3d 832 (2015), and argues this condition does not require affirmative conduct by Putman. At issue in Cates was the ripeness of a facial constitutional challenge to a community custody condition that required Cates to consent to searches upon request. The court determined Cates would not suffer a significant risk of hardship and declined to review the merits. Cates, 183 Wn.2d at 536. The State focuses on the court's reasoning that "[c]ompliance here does not require Cates to do, or refrain from doing, anything upon his release until the State requests and conducts a home visit" to assert that special condition 8 does not require affirmative conduct. Cates, 183 Wn.2d at 536. But we are not reviewing the condition for significant risk of hardship to determine ripeness. So while the condition may not have required Putman to do anything immediately upon release, it did require him to consent to home visits—presumably at

the time of a request by DOC. Because this condition is not authorized under former RCW 9.94A.120, the trial court did not have the authority to impose special condition 8.

Special condition 12 required Putman to register as a sex offender. Because such a condition was not authorized under former RCW 9.94A.120, the trial court did not have the authority to impose special condition 12. But Putman is ordered to register as a sex offender under a separate section of the original judgment and sentence, appendix J, under RCW 9A.44.128, .130, and .140. The trial court confirmed this requirement as ordered in appendix J in the amended judgment and sentence. Putman does not challenge this requirement or appendix J.

In summary, we remand to strike special conditions 1, 5 in part, 7, 8, 10, and 12 as unauthorized under former RCW 9.94A.120.

C

Putman argues that remand is necessary to strike the VPA and the DNA collection fee because he is indigent and recent legislation prohibits imposing the fees. The State does not dispute Putman's indigency and does not object to striking the VPA. The State also concedes the DNA collection fee should be stricken. We accept the State's concessions.

In 2023, the legislature added a subsection to RCW 7.68.035 that prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449, § 1. In addition, the legislature eliminated the DNA fee entirely. LAWS OF 2023, ch. 449, § 4. Our courts have held that recent amendments to statutes governing LFOs apply retroactively to matters pending on direct appeal. State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).

We remand to strike the VPA and the DNA collection fee.

We affirm Putman's standard range sentence and remand to correct only the sentencing errors discussed above.[3]

_Mann, J._

WE CONCUR:

_Feldman, J._                         _Hazelrigg, ACJ_

---

[3] Putman also argues that, on remand, reassignment to a different judge is necessary to preserve the appearance of fairness. Because remand is limited to nondiscretionary striking of certain parts of the judgment and sentence and amendment of the SAPO, reassignment is not available. State v. McEnroe, 181 Wn.2d 375, 387, 333 P.3d 402 (2014).