IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40009-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FERENCZ GABOR VEREBI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — A jury found Ferencz Verebi guilty of six counts of possession of depictions of a minor engaged in sexually explicit conduct in the first degree. Mr. Verebi maintained his innocence at sentencing. At sentencing, the court noted that Mr. Verebi lacked recognition of his sexually deviant behavior, thereby making him unamenable to treatment and sentenced Mr. Verebi to a standard range sentence of 90 months of incarceration and 36 months of community custody, among other sanctions.

Mr. Verebi appeals, arguing his right against self-incrimination was violated at sentencing, multiple conditions of community custody should be struck or amended, and his attorney was ineffective for failing to object to imposition of the improper community custody conditions. We disagree that Mr. Verebi's right against self-incrimination was violated or that his counsel was ineffective. We remand for one condition of community custody to be amended and for another to be struck from Appendix H to the judgment and sentence.

## BACKGROUND

In 2018, Mr. Verebi was investigated by the Federal Bureau of Investigations and the Douglas County Sheriff's Office for suspected possession of child pornography. Detective Jason DeMyer discovered child pornography was associated with an address in East Wenatchee, Washington, where Mr. Verebi resided. Mr. Verebi's home was searched by Douglas County Sheriff deputies following the issuance of a search warrant. During the search, police seized a short barrel shotgun, two computers, and other electronic devices. Child pornography was discovered on the seized computers.

Mr. Verebi was charged with six counts of possession of depictions of a minor engaged in sexually explicit conduct in the first degree.[1] While Mr. Verebi was in jail, he

---

[1] Mr. Verebi was also charged with possession of an unlawful firearm but that charge was dismissed at trial for insufficient evidence.

2

called his brother and recommended he "go buy some kind of software that does PC cleaning beyond the normal deleting of internet history and stuff" and "set it up on a schedule weekly, every three days." Rep. of Proc. (RP) at 294. Mr. Verebi also spoke to his brother in Hungarian and asked him to go to his home, look for the "four" guns, and take "the computer." RP at 425. His brother responded that the computer "was . . . gone." RP at 425. Recordings of these phone calls were played for the jury at trial and interpreted where necessary.

The case was tried to a jury. The jury found Mr. Verebi guilty of all six counts of possession of depictions of a minor engaged in sexually explicit conduct.

At sentencing, Mr. Verebi stated:

> I do stand on my innocence. With all due respect to the system, we know it is not perfect and things can happen. I was always good through school. I never had a problem in school. I've been gainfully employed my entire life. I don't have a criminal history. I have family and friends that are sticking by me and believe in me. So, I have enough to get me through.
>
> So, I'm just gonna ask that you're leniency—for your leniency in this, and I'll transfer it back to you, Your Honor.

RP at 656-57.

In imposing its sentence, the court noted that the Department of Corrections (DOC) "presentence investigation" stated, "since [Mr.] Verebi is not admitting to the offense, he will more than likely be deemed not amenable to treatment," and "[i]f [Mr.]

3

Verebi is not amendable to treatment then he will not be able to get any help to address the sexual deviant behaviors and his risk to reoffend will be higher." RP at 658.

The court went on to state:

I think that's really what that DOC report was—was touching on is if—when it says if [Mr.] Verebi is not amenable to treatment then he will not be able to get any help to address his sexual deviant behaviors and his risk to reoffend will be higher. So, it strikes me that a request for a leniency, a request to go below the standard range doesn't seem to me to be appropriate.

It—it just is what it is. I don't begrudge Mr. Verebi for wanting a trial, that's—that's not a problem. We don't punish folks for going to trial. But, on the other hand, when there's a request for leniency, it's—it makes it a tougher argument to argue I'm innocent. This is all, you know, this is not a legitimate guilty verdict, but nevertheless I'm asking for your leniency. It's just a tough sell.

RP at 659. The court also considered the fact that Mr. Verebi asked "his brother to go to the house and obtain the firearm and one or more computers." RP at 660.

The court sentenced Mr. Verebi to "more or less the middle of the [standard] range" of "90 months on each of the six counts to be served concurrent." RP at 660-61. The court ordered Mr. Verebi to serve 36 months of community custody and comply with the conditions listed in Appendix H to the judgment and sentence. Mr. Verebi's attorney was successful in objecting to the imposition of two community custody conditions.

Mr. Verebi timely appeals.

ANALYSIS

SELF-INCRIMINATION

Mr. Verebi argues his right against self-incrimination was violated at sentencing when the court denied his request for "leniency" based on his failure to show remorse or take responsibility for his crimes. He requests we remand for a resentencing. We disagree Mr. Verebi's right against self-incrimination was violated.

As a preliminary matter, the State argues Mr. Verebi's sentence is not eligible for appeal because it is within the standard range. We disagree. Generally, a defendant may not appeal a standard range sentence. *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003); RCW 9.94A.585(1). However, a defendant is "not precluded from challenging on appeal the procedure by which a sentence within the standard range was imposed." *State v. Ammons*, 105 Wn.2d 175, 183, 713 P.2d 719 (1986). Moreover, "constitutional challenges to a standard range sentence are always allowed, regardless of the clear prohibition of RCW 9.94A.210(1)." *State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993). Mr. Verebi challenges the procedure by which his sentence was imposed. His argument focuses on the court allegedly basing its sentencing decision on his lack of remorse or admission of guilt. He argues the mechanism used to impose his sentence violated his constitutional right against self-incrimination. Thus, his standard range sentence is appealable.

Turning to the merits, the federal and state constitutions guarantee an accused the right against self-incrimination. U.S. CONST. amend V; WASH. CONST. art. I, § 9. The right against self-incrimination extends to sentencing proceedings. *Mitchell v. United States*, 526 U.S. 314, 326-27, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999). Postconviction silence is also protected where a defendant's testimony may result in greater punishment. *State v. Strauss*, 93 Wn. App. 691, 698, 969 P.2d 529 (1999).

Mr. Verebi primarily relies on *State v. Sandefer*,[2] *State v. Garibay*,[3] *State v. Ramires*,[4] and a Montana case, *State v. Shreves*,[5] to support his contention that his right against self-incrimination was violated. *Garibay* and *Ramires* are distinguishable because each dealt with the trial court's reliance on the defendant's silence or lack of remorse for the imposition of an *exceptional* sentence. *Garibay*, 67 Wn. App. at 782; *Ramires*, 109 Wn. App. at 765-66. In *Garibay*, this court held a trial court may not rely on a defendant's silence as the basis to impose an exceptional sentence. 67 Wn. App. at 782. In *Ramires*, this court noted:

> Although Mr. Ramires did not apologize, show remorse, or accept responsibility for his actions, it is consistent with his failed defense and right to maintain his innocence. While a failed defense may at times be

---

[2] 79 Wn. App. 178, 900 P.2d 1132 (1995).

[3] 67 Wn. App. 773, 841 P.2d 49 (1992), *abrogated by State v. Moen*, 129 Wn.2d 535, 919 P.2d 69 (1996).

[4] 109 Wn. App. 749, 37 P.3d 343 (2002).

[5] 313 Mont. 252, 60 P.3d 991 (2002).

used to justify a mitigated exceptional sentence, the State points to no case, and we can find none supporting the proposition that a failed defense may serve as the basis for an aggravated exceptional sentence. To follow such a course may serve to chill a defendant's right to present a defense in the first place and maintain innocence throughout the criminal process, including appeal.

109 Wn. App. at 766.

Relatedly, the issue in *Sandefer* was whether the sentencing court improperly considered the defendant's decision to stand trial in imposing its sentence. 79 Wn. App. at 181. There, the trial court imposed the maximum standard range sentence, commenting:

I frequently . . . in sentencing within the standard range give a defendant a more lenient sentence if the defendant has entered a plea of guilty. And the predominant reason I do that, not because I'm trying to be nice to a defendant, but I know that defendants who do enter pleas of guilty, in cases of this nature, it saves the parent and the child a lot of grief, in that they don't have to go through this experience, this heart rendering experience in the courtroom in having a poor little girl testify in front of a whole bunch of strangers about what happened to her.

Mr. Sandefer, if you entered a plea of guilty, I very possibly would have given you a more lenient sentence towards the lower end of the range, because of saving the victim being victimized by going through this court process. You didn't, and I'm not going to give you that break.

*Id.* at 180. This court held the sentencing court's remarks did not "indicate improper consideration" of Mr. Sandefer's right to stand trial. *Id.* at 184. The court noted that "[a]part from correctly explaining why Sandefer could no longer demand the benefit of a

7

plea offer he earlier rejected, nothing in the court's remarks affirmatively indicate[] that the court improperly considered Sandefer's decision to stand trial." *Id.*

Finally, in *Shreves*, which is not binding on this court, the Montana Supreme Court addressed "whether the rule against a negative inference from silence at a criminal trial applies to sentencing as well, when the defendant has maintained his innocence throughout the proceedings." 313 Mont. at 258. The Montana Supreme Court stated:

> While we agree with the State that rehabilitation is an important factor to consider at sentencing, and, while we agree that lack of remorse can be considered as a factor in sentencing, we cannot uphold a sentence that is based on a refusal to admit guilt. To do so would reflect an inquisitorial system of justice rather than our adversarial system.

*Id.* at 260. The Supreme Court stated that the trial court improperly penalized Mr. Shreves for maintaining his innocence but added, "we make clear that the trial court can consider as a sentencing factor a defendant's lack of remorse as evidenced by any admissible statement made by the defendant pre-trial, at trial, or post-trial." *Id.*

Here, the trial court did not base Mr. Verebi's sentence solely on his silence or refusal to admit guilt. Instead, the court relied, in part, on Mr. Verebi's posttrial statements, but also on the DOC presentence investigation report, and the evidence at trial, including the fact that Mr. Verebi asked his brother "to go to the house and obtain the firearm and one or more computers." RP at 660. The court noted that the DOC report stated Mr. Verebi will be less amendable to treatment if he does not admit to the offenses. Albeit the court stated that Mr. Verebi's request for a sentence "below the

standard range" was not "appropriate" and a "tough sell," but it also made clear that it did

not "begrudge Mr. Verebi for wanting a trial." RP at 659. Ultimately, the court imposed

a mid-range sentence. There is no indication the trial court based its sentencing decision

solely on Mr. Verebi's silence or refusal to admit guilt. The trial court properly

considered multiple factors in imposing its sentence and, in any event, he was sentenced

well within the standard range.

Mr. Verebi's right against self-incrimination was not violated during his

sentencing.

CONDITIONS OF COMMUNITY CUSTODY

Mr. Verebi argues numerous community custody conditions, delineated in

Appendix H to the judgment and sentence, are unconstitutional or not crime related and

must either be amended or struck. The State concedes that some conditions should be

amended or struck but argues others are not ripe and should not be addressed. We

remand for condition 4, requiring Mr. Verebi to pay DOC supervision fees, to be struck

and for condition 12, pertaining to Mr. Verebi's Internet use, to be amended. We affirm

the court's imposition of all other challenged conditions.

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW states that "when

a court sentences a person to a term of community custody, the court shall impose

conditions of community custody." *State v. Peters*, 10 Wn. App. 2d 574, 580-81, 455

P.3d 141 (2019). Pursuant to the SRA, community custody provisions are either

9

(1) mandatory, (2) waivable, (3) discretionary, or (4) special conditions. RCW 9.94A.703(1)-(4).

Community custody conditions may be challenged for the first time on appeal and, if the challenge involves a legal question that can be resolved on the existing record, they may be challenged before enforcement. *State v. Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019). We review the imposition of community custody conditions for an abuse of discretion. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). "A trial court abuses its discretion if it imposes an unconstitutional condition." *Id.* "[W]e review constitutional questions de novo." *Wallmuller*, 194 Wn.2d at 238.

### *Geographic Restriction (Condition 8)*

Mr. Verebi argues condition 8 is unconstitutionally vague. The State concedes. However, we disagree with both the State and Mr. Verebi and hold the condition is not unconstitutionally vague.

Condition 8 reads: "Remain within geographic boundaries, as set forth in writing by the Department of Correction Officer." Clerk's Papers (CP) at 95.

A community custody condition is unconstitutionally vague under the due process clause of the Fourteenth Amendment to the United States Constitution and article I, section 3, of the Washington Constitution "'if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary

10

enforcement.'" *Wallmuller*, 194 Wn.2d at 238-39 (quoting *Padilla*, 190 Wn.2d at 677).

"[A] community custody condition 'is not unconstitutionally vague merely because a

person cannot predict with complete certainty the exact point at which [their] actions

would be classified as prohibited conduct.'" *State v. Valencia*, 169 Wn.2d 782, 793, 239

P.3d 1059 (2010) (quoting *State v. Sanchez*, 148 Wn. App. 302, 321, 198 P.3d 1065

(2009), *rev'd*, 169 Wn.2d 782, 239 P.3d 1059 (2010)).

First, our Supreme Court has stated that "[w]hile the right to travel is recognized

as a fundamental right of citizenship, this right is affected by a criminal conviction." *In

re Pers. Restraint of Winton*, 196 Wn.2d 270, 274, 474 P.3d 532 (2020). Infringement on

an offender's right to travel is authorized while the offender is serving community

custody. *Id.* at 275.

Recently, in *State v. Lundstrom*, Division One of this court held the same

community custody condition imposed on Mr. Verebi was not vague. __ Wn. App. __,

572 P.3d 1243 (2025). The court in *Lundstrom* noted that the condition was authorized

under RCW 9.94A.703(1)(b), (3)(a), and RCW 9.94A.704(3)(b). RCW 9.94A.703(3)(a)

authorizes the trial court to order an offender to "[r]emain within, or outside of, a

specified geographical boundary." Similarly, RCW 9.94A.704(3)(b) states when DOC

supervises an offender, "the department shall at a minimum instruct the offender to . . .

[r]emain within prescribed geographical boundaries."

11

The *Lundstrom* court also noted that the community corrections officer's authority to impose conditions is limited and must be "'reasonably related to . . . [t]he crime of conviction, the offender's risk of reoffending, or the safety of the community.'" 572 P.3d at 1245-46 (quoting RCW 9.94A.704(7)(b)).  Further, if an offender believes a geographic restriction is not related to one of these categories, the offender has the right to pursue administrative review.  *Id.* at 1246.

We follow the reasoning in *Lundstrom*.  The condition mandating that Mr. Verebi stay within a geographic boundary prescribed by his community corrections officer is not unconstitutionally vague because the statutes authorizes the DOC to set geographic boundaries and because such restrictions are limited in application and subject to review.[6]

*Restrictions on Contact with Minors (Conditions 23 & 24)*

Next, Mr. Verebi argues the court erred when it imposed community custody conditions 23 and 24 because they interfere with his right to parent if he has children in

---

[6] Mr. Verebi correctly points out that at least two unpublished decisions out of this division held the condition was unconstitutionally vague. *In re Pers. Restraint of Bratcher*, No. 39758-1-III, slip op. at *2-3 (Wash. Ct. App. Apr. 2, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/397581_unp.pdf; *In re Pers. Restraint of Alaniz*, No. 39631-2-III, slip op. at *6 (Wash. Ct. App. Mar. 21, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/396312_unp.pdf.  However, those unpublished opinions have no precedential value, and we instead are persuaded by Division One's more recent decision in *Lundstrom.*

the future. The State responds that this condition is not ripe for review. We agree with the State.

> Condition 23 states:
>
> Have no direct and/or indirect contact with minors (underage 18) without a Supervisor of Contact who has been approved in writing by [community corrections officer] and treatment provider (when active in treatment). Contact during and for the sole purposes of employment duties, that is approved by [community corrections officer] with a safety plan, is permitted without a Supervisor of Contact being present.

CP at 95-96. Condition 24 states: "Do not hold any position of authority or trust involving minors, includes providing oversight to minors, employment, self-employment, and/or volunteer positions." CP at 96. Mr. Verebi contends the court erred in imposing these conditions without acknowledging his constitutional right to parent and without modifying the conditions to account for children he may have in the future. Because Mr. Verebi does not have children, this condition is not ripe for review.

In determining whether a pre-enforcement challenge to a community custody condition is ripe for review, we determine whether "'the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Valencia*, 169 Wn.2d at 786 (quoting *State v. Bahl*, 164 Wn.2d 739, 751, 193 P.3d 678 (2008)). We also consider the hardship to the defendant if the challenged condition is not reviewed on appeal. *State v. Cates*, 183 Wn.2d 531, 534, 354 P.3d 832 (2015).

While the challenged action is final and the claim raises primarily legal issues, it requires further factual development because Mr. Verebi does not presently have biological children nor is there evidence he is expecting a child. Furthermore, any hardship Mr. Verebi may face is insufficient to justify review because there is currently no parent-child relationship that could be affected by the condition, and Mr. Verebi may seek modification of the condition via the mechanism provided in RCW 9.94A.709(2)(a) if he does have a child while on community custody.

Because Mr. Verebi's challenge to conditions 23 and 24 is not ripe, we decline review.

*Condition Related to Controlled Substances (Condition 3)*

Mr. Verebi next challenges a community custody condition ordering him not to possess or consume controlled substances because it is not crime related. The State concedes. However, we decline to remand for the trial court to strike this condition because it need not be crime related to be imposed.

Condition 3 states: "Not possess or consume controlled substances except pursuant to lawfully issued prescriptions." CP at 95. Mr. Verebi argues there is no evidence drug use contributed to his crimes. However, his argument fails because this condition need not be crime related in order for the court to impose it.

Discretionary community custody provisions may be imposed under certain circumstances depending on the subsection of the statute on which they are based. For

example, some discretionary conditions must be crime related. *See* RCW

9.94A.703(3)(c), (f) ("crime-related treatment" and "crime-related prohibitions").

However, other conditions only need to have a loose connection to the convicted offense.

*See State v. Geyer*, 19 Wn. App. 2d 321, 326, 496 P.3d 322 (2021); *see* RCW

9.94A.703(3)(b), (d) ("Refrain from direct or indirect contact with the victim of the crime

or a specified class of individuals" and "Participate in rehabilitative programs or

otherwise perform affirmative conduct related to the circumstances of the offense, the

offender's risk of reoffending, or the safety of the community."). Finally, some

conditions do not require any particular connection. *See* RCW 9.94A.703(3)(a), (e)

("Remain within, or outside of, a specified geographic boundary" and "Refrain from

possessing or consuming alcohol.").

Moreover, a court is authorized to order that an offender "[c]omply with any

crime-related prohibitions." RCW 9.94A.703(3)(f). Crime-related prohibitions are those

that prohibit "conduct that directly relates to the circumstances of the crime for which the

offender has been convicted." RCW 9.94A.030(10). If there is no evidence in the record

linking the circumstances of the crime to the particular condition, the court must strike

the challenged condition. *Padilla*, 190 Wn.2d at 683.

For crime-related challenges, a "'reasonable relationship'" must exist between

the crime of conviction and the community custody condition. *State v. Nguyen*, 191

Wn.2d 671, 684, 425 P.3d 847 (2018) (quoting *State v. Irwin*, 191 Wn.2d 22, 37, 846

15

P.2d 1365 (1993)). That is, "there must be 'some basis for the connection.'" *Id.*

(quoting *Irwin*, 191 Wn.2d at 657). We will review the "factual basis for a trial court's

implicit finding that a condition is crime related using a 'substantial evidence' standard."

*Peters*, 10 Wn. App. 2d at 591.

As discussed above, some conditions must be crime related while others need not

be. RCW 9.94A.703(2)(c) is a waivable condition that states a court shall order an

offender to "[r]efrain from possessing or consuming controlled substances." A waivable

condition does not have to be crime related in order to be imposed. *In re Pers. Restraint*

*of Brettell*, 6 Wn. App. 2d 161, 173, 430 P.3d 677 (2018).

Our Supreme Court recently clarified this issue and held "it is undisputed" that

"conditions prohibiting alcohol and drug use [are] validly imposed pursuant to [a]

sentencing court's statutory authority." *State v. Nelson*, 4 Wn.3d 482, 503-04, 565 P.3d

906 (2025). As such, condition 3 is valid.

*Condition Prohibiting Internet Access (Condition 12)*

Mr. Verebi argues the community custody condition prohibiting him from using

the Internet unless preapproved and under conditions specified by his community

corrections officer or treatment provider is unconstitutionally vague, overbroad, and

violates his rights under the First Amendment to the United States Constitution and

article I, section 7 of the Washington State Constitution. The State concedes. We

remand for the condition to be amended.

16

Condition 12 states: "Do not access the internet unless pre-approved and under the conditions specified by your community corrections officer and/or treatment provider, if applicable." CP at 95.

First, Mr. Verebi argues the condition is unconstitutionally vague. We agree the condition is vague because it "does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *Padilla*, 190 Wn.2d at 677. The community correction officer's discretion to impose conditions on Internet use "only makes the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement." *Bahl*, 164 Wn.2d at 758.

Second, Mr. Verebi contends the condition is unconstitutionally overbroad and interferes with his First Amendment rights. In *State v. Johnson*, our Supreme Court analyzed a community custody condition prohibiting the defendant from using the Internet unless authorized by his community custody officer and through approved filters. 197 Wn.2d 740, 744, 487 P.3d 893 (2021). There, Mr. Johnson challenged the condition as being unconstitutionally vague and overbroad. *Id.* at 745-50. In analyzing overbreadth, the court recognized some of the SRA's stated goals were to "prevent[] recidivism, protect[] the public, and provid[e] offenders with opportunities to improve themselves." *Id.* at 745. It noted Mr. Johnson, like Mr. Verebi, committed his crimes using the Internet, and a "proper filter restricting his ability to use the internet to solicit children or commercial sexual activity will reduce the chance he will recidivate and will

17

also protect the public." *Id.* at 745-46. Moreover, the *Johnson* court distinguished the condition analyzed by the United States Supreme Court in *Packingham* and found the condition at issue was "significantly narrower than the statute struck" in that case. *Id.* at 746 (citing *Packingham v. North Carolina*, 582 U.S. 98, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017)). Thus, it found the condition was not overbroad. *Id.* at 746-47.

Mr. Verebi argues that, unlike in *Johnson*, the condition imposed on him is not narrowly tailored enough to avoid violating his First Amendment rights. Restrictions on Internet use implicate the First Amendment to the United States Constitution. *Packingham*, 582 U.S. at 104. However, "the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." *Id*. at 107. A court may restrict a defendant's Internet access if those restrictions are "narrowly tailored to the dangers posed by the specific defendant." *Johnson*, 197 Wn.2d at 745. We have previously held that a blanket prohibition on using the Internet is impermissibly broad, even where, as here, the defendant used the Internet to commit a sex offense. *In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 73, 469 P.3d 322 (2020), *abrogated by State v. J.M.-H*, 4 Wn.3d 648, 566 P.3d 847 (2025). In *Sickels*, we endorsed the State's suggestion that the condition prohibiting Internet use be amended to require "no internet use of websites

including email, to contact minors, to gather information about minors, or access personal webpages of minors." *Id.* at 71, 74.

We remand with instructions for the trial court to amend condition 12 to a more narrowly-tailored restriction. Adopting similar language to that in *Sickels* would resolve the vagueness issue and prevent interference with Mr. Verebi's First Amendment rights.

### *Home Visits (Condition 18)*

Mr. Verebi challenges the condition requiring him to submit to home visits, including visual inspection of all areas he lives, as unconstitutional under the Fourth and Fourteenth Amendments. The State responds that the issue is not ripe for review. We agree with the State.

Condition 18 states: "Consent to DOC home visits to monitor compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of residence in which the offender lives or has exclusive/joint control/access." CP at 95.

Generally, warrantless searches are per se unreasonable. *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). However, there are some "'carefully drawn exceptions.'" *State v. Cornwell*, 190 Wn.2d 296, 301, 412 P.3d 1265 (2018) (quoting *Ladson*, 138 Wn.2d at 349).

Offenders on community custody are not entitled to the full protection of article I, section 7 of the Washington Constitution because they are persons that a court has sentenced to confinement but who are "'serving their time outside the prison walls.'" *Id.*

19

(quoting *State v. Olsen*, 189 Wn.2d 118, 124-25, 399 P.3d 1141 (2017)).  Thus, "it is

constitutionally permissible for a [community corrections officer] to search an individual

based only on a 'well-founded or reasonable suspicion of a probation violation,' rather

than a warrant supported by probable cause."  *Id.* at 302 (quoting *State v. Winterstein*,

167 Wn.2d 620, 628, 220 P.3d 1226 (2009)).

This exception is codified at RCW 9.94A.631(1), which states, "If there is

reasonable cause to believe that an offender has violated a condition or requirement of the

sentence, a community corrections officer may require an offender to submit to a search

and seizure of the offender's person, residence, automobile, or other personal property."

A community corrections officer "must have 'reasonable cause to believe' a probation

violation has occurred before conducting a search at the expense of the individual's

privacy."  *Cornwell*, 190 Wn.2d at 304 (quoting RCW 9.94A.631(1)).  Further, the

offender's "privacy interest is diminished only to the extent necessary for the State to

monitor compliance with the particular probation condition that gave rise to the search."

*Id.*

The same challenge to an identical home visit condition was rejected by our

Supreme Court in *State v. Cates*, in which the court held the challenge was not ripe for

review.  183 Wn.2d 531, 535-36, 354 P.3d 832 (2015).  In *Cates*, the Supreme Court also

stated, "[c]ompliance here does not require Cates to do, or refrain from doing, anything

upon his release until the State requests and conducts a home visit.  Cates will not 'suffer

20

significant risk of hardship' if we decline to review the merits at this time." *Id*. at 536

(quoting *Valencia*, 169 Wn.2d at 790). We are bound by *Cates*.

Because community custody condition 18 is not ripe for review, we decline to

remand for the condition to be struck.

*Community Custody Supervision Fees (Condition 4)*

Finally, Mr. Verebi challenges the imposition of community custody supervision

fees because he is indigent. The State concedes. We remand for the trial court to strike

this condition.

Condition 4 requires Mr. Verebi to "[p]ay supervision fees as determined by

the Department of Corrections." CP at 95. Mr. Verebi was found to be indigent at

sentencing. Former RCW 9.94A.703(2) (2009) provided that "[u]nless waived by

the court, as part of any term of community custody, the court shall order an offender

to . . . (d) [p]ay supervision fees as determined by the department." House Bill 1818

struck the language allowing a court to impose DOC supervision from the statute, and

RCW 9.94A.703 (2022) now reflects that change. Thus, the court did not have the

authority to order him to pay DOC supervision fees when Mr. Verebi was sentenced.

We remand for condition 4 to be struck from Appendix H to Mr. Verebi's

judgment and sentence.

INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Verebi argues, as an alternative, that his attorney was ineffective for failing to object to his challenged community custody conditions. We disagree that his attorney was ineffective.

Defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Ineffective assistance of counsel claims are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

The defendant bears the burden of showing (1) that his counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, (2) that there is a reasonable probability that but for counsel's poor performance, the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

A defendant alleging ineffective assistance of counsel bears the burden of showing deficient representation. *McFarland*, 127 Wn.2d at 335. In reviewing the record, there is a strong presumption that counsel's performance was reasonable. *Id.* "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at

22

the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). "When counsel's conduct can be characterized as a legitimate trial strategy or tactic, their performance is not deficient." *Kyllo*, 166 Wn.2d at 863. "We can presume counsel did not request limiting instructions to avoid reemphasizing damaging evidence." *State v. Dow*, 162 Wn. App. 324, 335, 253 P.3d 476 (2011); *see also State v. Yarbrough*, 151 Wn. App. 66, 210 P.3d 1029 (2009) (failure to request a limiting instruction presumed to be a legitimate trial tactic not to reemphasize damaging evidence); *State v. Kloepper*, 179 Wn. App. 343, 356, 317 P.3d 1088 (2014) ("The decision to not object to or seek a cure for damaging evidence is a classic tactical decision.").

Even if we find that counsel's performance was deficient, a defendant must affirmatively prove prejudice. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). This requires more than simply showing that "the errors had some conceivable effect on the outcome." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant demonstrates prejudice by showing that the proceedings would have been different but for counsel's deficient representation. *McFarland*, 127 Wn.2d at 337.

Mr. Verebi argues counsel was ineffective for failing to object to his challenged community custody conditions. We disagree.

23

Mr. Verebi's attorney was not ineffective because his decision not to object could be characterized as a legitimate trial strategy. As Mr. Verebi recognizes, his attorney *did* successfully object to conditions 19 and 20. His attorney also unsuccessfully objected to condition 21. It was a legitimate trial strategy for counsel to refrain from continued objections to Mr. Verebi's community custody conditions. In other words, it was a strategic decision for counsel to quit while they were ahead. Because counsel was not deficient, we need not analyze whether the failure to object was prejudicial.

CONCLUSION

We affirm Mr. Verebi's sentence and remand for the trial court to amend condition 12 to a more narrowly-tailored restriction, and to strike condition 4 from Appendix H to the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

I CONCUR:


_____
Murphy, J.

No. 40009-3-III

FEARING, J — (dissent/concurrence) I dissent from the majority's affirmation of the sentencing court's imposition of community custody condition 8, the geographic boundary restriction. I concur with the majority's affirmation of the sentencing court's community custody condition 18, the submittal to home searches. The affirmation of condition 18 obeys the Washington Supreme Court's decade-old opinion, *State v. Cates*, 183 Wn.2d 531, 354 P.3d 832 (2015). Nevertheless, I write separately about condition 18 because *State v. Cates* contradicts fundamental principles of constitutional law and other Supreme Court decisions on home searches.

Condition 8—Geographic Boundaries

Community custody condition 8 orders Ferencz Verebi to "remain within geographic boundaries, as set forth in writing by the Department of Correction Officer." Clerk's Papers (CP) at 95. Ferencz Verebi contends this condition violates his constitutional right to due process because the condition imposes no ascertainable standards on his community custody officer when the officer draws the boundaries. The State agrees. I agree. The majority erroneously disagrees.

RCW 9.94A.703 empowers the sentencing court to impose geographic boundaries in which the offender must stay put. In the alternative, RCW 9.94A.704(3)(b) authorizes Department of Corrections (DOC) to instruct the offender to "remain within prescribed geographic boundaries." Ferencz Verebi's sentencing court directed the DOC community custody officer to establish the confined borders.

A condition of community custody is unconstitutionally vague if it either fails to give fair warning of the forbidden conduct or fails to set ascertainable standards that will prevent arbitrary enforcement. *State v. Johnson*, 197 Wn.2d 740, 747, 487 P.3d 893 (2021); *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). This appeal involves the potential for arbitrary enforcement of the community custody condition.

Community custody condition 8 demands that Ferencz Verebi remain in a geographic boundary established by his community custody officer. The condition bestows the officer unrestrained authority. The officer could permit Verebi to travel anywhere within the Milky Way galaxy or to constrict Verebi within a one square city block. The officer could bidaily modify the circumscribed quarters depending on his or her changing gastronomy.

The majority and another division writing in *State v. Lundstrom*, 34 Wn. App. 2d 977, 572 P.3d 1243 (2025) justify the violation of Ferencz Verebi's due process rights by citing RCW 9.94A.704(7)(b). This statutory subsection demands that the community custody officer impose only conditions "reasonably related to . . . [t]he crime of conviction, the offender's risk of reoffending, or the safety of the community." RCW 9.94A.704(7)(b). We know now that any geographic travel restriction meets none of these three criteria.

The State of Washington convicted Ferencz Verebi with possession of depictions of minors engaged in sexually explicit conduct. We do not know the victims of the crime

2

or their locations such that we do not know whether any particular travel restriction benefits the victims. The State presents no evidence that Verebi traveled to gain possession of the child pornography let alone evidence of any location where he gained possession. Most offenders stay at home in the basement and download the pornography through the Internet. Thus, any restriction does not decrease recidivism. Any travel restriction does not protect the community nor bear any relationship to the crime. DOC may restrain Verebi's travel inside the world wide web but not in the real world.

The majority and a sibling division, writing in *State v. Lundstrom*, 34 Wn. App. 2d 977 (2025) also excuse the due process violation when commenting that the offender may challenge, according to RCW 9.94A.704(7)(b), the geographical limitation after the community custody officer establishes the demarcations. We do not know how long this challenge will take, but Verebi's liberty to travel will be restricted in the meantime. Regardless, the availability of post-deprivation procedures does not necessarily satisfy due process dictates. *Rivera-Powell v. New York City Board of Elections*, 470 F.3d 458, 465 (2d Cir. 2006). Only when the State cannot anticipate and prevent a random deprivation of a liberty interest may post-deprivation remedies satisfy due process. *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). DOC knows in advance that its community custody officer possessing discretion to ascertain geographic boundaries violates constitutional standards. In fact, the State has conceded the unconstitutionality of the community custody condition.

3

Condition 18—Home Visits

Ferencz Verebi contends that community custody condition 18, which allows DOC officers access to his residence, violates his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution. The State asks this court to decline review on ripeness grounds. The majority grants the State's request.

I am bound by *State v. Cates*, 183 Wn.2d 531 (2015) to join in the majority's refusal to address Ferencz Verebi's challenge to a community custody condition that declares Verebi to have consented to searches of his residence. Under *Cates*, the challenge lacks the necessary maturity. I consider *Cates* to be wrongly decided, however. The three dissenting justices in *State v. Cates* correctly reasoned that a challenge to unlimited searches of the offender's residence violates article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution. More importantly, as rightly concluded by the dissenters in *Cates*, the challenge is ripe for review.

The superior court sentenced Ferenz Verebi to 90 months of incarceration and 36 months of community custody thereafter. One condition during community custody demands that Verebi:

> Consent to DOC home visits to monitor compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of residence in which the offender lives or has exclusive/joint control/access.

4

CP at 95.  Presumably Verebi remains incarcerated.  Therefore, DOC has not yet sought

to enforce the challenged community custody condition.

Awkward language in the community custody condition could raise anomalies in

the future.  The superior court could have written that "DOC enjoys the right to enter

Ferencz Verebi's residence and search the premises at any time in order to monitor

compliance with supervision."  Instead, the court phrased the community custody

condition as imposing an obligation on Verebi to "consent to home visits . . .  to monitor

compliance."  CP at 95.  The language may be read in a variety of ways.

The majority's dismissal of Ferencz Verebi's challenge to the community custody

condition on ripeness grounds assumes that Verebi may challenge the constitutionality of

the search of his home at the time of the search.  The plain meaning of the community

custody condition establishes, however, that Verebi, in advance, consents to any search,

regardless of whether specifically asked before entry and regardless of the reason for the

search.  He has no choice but to consent when DOC seeks to enter his abode.  When

consenting to a search, the offender foregoes the right to later challenge the

constitutionality of the search.  *State v. Bustamante-Davila*, 138 Wn.2d 964, 983 P.2d 590

(1999).  Thus, with the community custody condition, Verebi lacks any opportunity to

challenge a search after its completion.

On the other hand, use of the word "consent" in the community custody condition

may require that DOC, before entering Ferencz Verebi's, must ask Verebi for consent to

5

do so. In turn, since DOC must ask, Verebi may have the right to deny consent. By denying consent, Verebi may preclude the search of his premises. Nevertheless, Verebi probably violates the community custody condition, and the court may penalize him for this violation.

DOC may have no legitimate grounds to enter Ferencz Verebi's residence because it lacks a reasonable articulable suspicion that any objects or activities inside the home hold a nexus to a purported community custody violation. DOC might engage in a hunting expedition. Verebi might ask DOC for the basis of entering and searching his home and learn that DOC lacks grounds. Verebi may then justifiably reject consent. DOC may still punish him, however, for violating the community custody condition under which he possesses the obligation to consent to all searches. He is darned if he consents and darned if he withholds consent.

The State does not argue against the illegality of Ferencz Verebi's community custody condition. The condition is unconstitutional. In the context of a community custody violation, our Supreme Court held in *State v. Cornwell*, 190 Wn.2d 296, 301, 412 P.3d 1265 (2018) that article I, section 7 of the Washington Constitution requires a nexus between the property searched and the suspected probation violation. In addition, a community custody officer must hold reasonable cause to believe the offender committed a probation violation before conducting a search at the expense of the individual's privacy. *State v. Cornwell*, 190 Wn.2d 296, 304 (2018). The search may diminish an

individual's privacy only to the extent necessary for the State to monitor compliance with

the probation condition that gave rise to the search. *State v. Cornwell*, 190 Wn.2d 296,

304 (2018).

Ferencz Verebi's community custody condition violates the safeguards established

in *State v. Cornwell*. The condition gives community custody officers an unrestricted

right to search Verebi's residence.

Ferencz Verebi's community custody condition also breaches a Washington

statute. RCW 9.94A.631 provides an exception to the warrant requirement.

RCW 9.94A.631(1) reads:

> If an offender violates any condition or requirement of a sentence, a
> community corrections officer may arrest or cause the arrest of the offender
> without a warrant, pending a determination by the court or by the
> department. If there is reasonable cause to believe that an offender has
> violated a condition or requirement of the sentence, a community
> corrections officer may require an offender to submit to a search and
> seizure of the offender's person, residence, automobile, or other personal
> property.

The phrase "reasonable cause" in RCW 9.94A.631(1) demands the officer to have

a well-founded suspicion that a violation has occurred. *State v. Jardinez*, 184 Wn. App.

518, 524, 338 P.3d 292 (2014). Reasonable suspicion requires specific and articulable

facts and rational inferences. *State v. Jardinez*, 184 Wn. App. 518, 524 (2014). Ferencz

Verebi's community custody condition does not comply with these statutory restrictions

on home visits.

7

To repeat, the majority declines to review the constitutional challenge based on the ripeness doctrine. A preenforcement challenge to a community custody condition is ripe for review when the issues raised are primarily legal, do not require further factual development, and the challenged action is final. *State v. Nelson*, 4 Wn.3d 482, 494, 565 P.3d 906 (2025); *State v. Cates*, 183 Wn.2d 531, 534 (2015); *State v. Sanchez Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010).

In addition, when assessing ripeness, the court must consider the hardship the offender will face on declination of the preenforcement challenge. *State v. Nelson*, 4 Wn.3d 482, 494 (2025); *State v. Sanchez Valencia*, 169 Wn.2d 782, 789 (2010). The Washington Supreme Court recognizes that the risk of hardship to the offender may justify review of a challenge to a community custody condition regardless of the need for factual development. *State v. Nelson*, 4 Wn.3d 482, 494 (2025); *State v. Cates*, 183 Wn.2d 531, 535 (2015). The risk looms greatest when the challenged conditions will immediately restrict the offender's conduct on release from prison. *State v. Sanchez Valencia*, 169 Wn.2d 782, 791 (2010).

No facts need to be developed to declare Ferencz Verebi's community custody condition invalid. Verebi does not challenge the condition based on any discrete facts, but on its face. The condition is now invalid and will remain invalid until the cows come home no matter what action DOC takes regarding Verebi.

8

A court's invalidation of the community custody condition harms DOC none. Even without the language in the judgment and sentence, DOC may enter and search Ferencz Verebi's domicile if it has reasonable suspicion that evidence inside the home holds relevance to a community custody violation. RCW 9.94A.631(1); *State v. Jardinez*, 184 Wn. App. 518 (2014).

Contemporaneously on his release, Ferencz Verebi suffers limits to his liberty based on the community custody condition. On return to his home, Verebi must pattern his conduct on the assumption that DOC may enter his home at any time. He may as well hand DOC a key to his residence. One may argue that Verebi should already conform his behavior to comply with community custody conditions and to the law such that he incurs no prejudice by unlimited searches. But American law takes a more mature approach to individual liberties. Article I, section 7 of the Washington Constitution and RCW 9.94A.631 demands a reasonable articulable suspicion to search even for a released offender's domicile. Verebi also incurs prejudice on release, because, as already noted, he may be harmed if he consents and harmed if he denies consent. Because of this prejudice to Verebi and because the issue is purely a legal question that needs no factual development, this court should now strike the community custody condition.

Unfortunately, a majority of the Supreme Court, in *State v. Cates*, 183 Wn.2d 531 (2015), ruled that a preenforcement suit to invalidate the same community custody condition was not ripe. Michael Cates contested a condition that read:

9

> You must consent to [Department of Corrections] home visits to monitor your compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have exclusive/joint control/access, to also include computers which you have access to.

*State v. Cates*, 183 Wn.2d 531, 533 (2015). For our purposes, the condition is identical to Ferencz Verebi's community custody condition. Cates argued his challenge did not require further factual development because the condition, on its face, authorized unconstitutional searches. When declaring the challenge premature, the Supreme Court surprisingly wrote that the condition as written did not authorize any searches. Despite the language demanding that Cates grant consent, the court commented that DOC must attempt to enforce the condition by requesting a home visit. This court followed the *Cates* decision in *State v. Peters*, 10 Wn. App. 2d 574, 455 P.3d 141 (2019).

The dissent, in *State v. Cates*, characterized Michael Cates' challenge to the community custody condition as primarily legal in nature. The dissent also reasoned that the contest did not require further factual development. Cates did not challenge the legality of any particular search, but the condition on its face. DOC did not need to conduct an illegal search before the Supreme Court could resolve the constitutionality of the condition. The language of the community custody condition demanded that Cates consent to all entries and searches. The condition permitted searches without reasonable cause.

10

In *State v. Cates*, the Supreme Court held that the risk of hardship to Michael Cates was insufficient to justify review because complying with the challenged condition did not require the defendant to do, or refrain from doing, anything on his release until the State requested and conducted a home visit. But, although the court suggested otherwise, the community custody condition imposed no requirement that DOC request a visit before doing so. The dissent in *Cates* correctly concluded that Michael Cates suffered hardship. On release, Cates needed to immediately and repeatedly consent to entry into his home. He needed to alter his behavior accordingly to avoid a violation of the community custody condition.

_Fearing, J._

Fearing, J.